Susan Renae MILES, Individually and as Next Friend of Willie Searcy and Jermaine Searcy, Minors and Kenneth Miles, Appellants,

v.

FORD MOTOR COMPANY and Douglas Stanley, Jr. d/b/a Doug Stanley Ford, Appellees.

No. 95–9198.

Supreme Court of Texas.

Dec. 22, 1995.

PER CURIAM.

The motion for rehearing of Ford Motor Company is overruled. The following opinion is substituted for the Court's September 14, 1995, per curiam opinion.

Judgments rendered by the Fourth Judicial District Court in Rusk County may be appealed to either the Sixth Court of Appeals in Texarkana or the Twelfth Court of Appeals in Tyler. *See* Tex. Gov't Code § 22.201(g), (m). Plaintiffs appealed a judgment from the Fourth Judicial District to the Sixth Court of Appeals, while defendant appealed the same judgment to the Twelfth Court of Appeals. In this administrative proceeding, defendant requests that we consolidate both appeals in the Twelfth Court of Appeals by transferring plaintiffs' appeal to that court. Because plaintiffs' appeal was the first to be perfected, we deny the motion to transfer.

Willie Searcy suffered severe and permanent injury from a collision while riding as a passenger in a Ford vehicle. Willie's family sued Ford Motor Company ("Ford") and Doug Stanley Ford ("Stanley"), the seller of the vehicle, in Rusk County, claiming product defect. Willie's mother asserted claims individually and as next friend of Willie, while Willie's brother and step-father asserted claims for loss of consortium. In January 1995, the trial court granted summary judgment for the defendants on the brother's and step-father's consortium claims. Plaintiffs immediately attempted to perfect an appeal from the summary judgment to the Sixth Court of Appeals, but the consortium claims had not been severed from the other portions of the case, and plaintiffs do not dispute that their appeal was premature. There is no indication in the record before us, however, that Ford moved to dismiss the premature appeal, or that the court of appeals took any action prior to the plaintiffs' filing of a timely appeal bond from the subsequent final judgment, as discussed below.

At trial, the jury found against Ford on all remaining claims, while returning findings exonerating Stanley from liability. The trial court rendered judgment against Ford on the verdict, signing a judgment on March 9, 1995, awarding actual damages of $27.8 million and punitive damages of $10 million. Later that same day, plaintiffs perfected an appeal to the Sixth Court of Appeals, challenging the trial court's summary judgment for Ford on the consortium claims and the take-nothing judgment on the jury's verdict for Stanley.[1]

On March 29, 1995, Ford perfected a separate appeal to the Twelfth Court of Appeals. Plaintiffs moved to dismiss this appeal, contending that the court at Texarkana had already acquired dominant jurisdiction over the entire appeal. That motion to dismiss is apparently still pending.

■ Ford subsequently filed a motion in the Sixth Court of Appeals to transfer plaintiffs' appeal to the Twelfth Court of Appeals. After notifying the parties that it had no statutory authority to transfer appeals, the Sixth Court forwarded Ford's motion to this Court, together with a letter indicating that it had no objection to the transfer.[2] The Sixth Court has abated the appeal pending our consideration of the motion to transfer.

■ Only the Supreme Court is authorized to transfer appellate cases. The statute provides:

> The supreme court may order cases transferred from one court of appeals to another at any time that, in the opinion of the supreme court, there is good cause for the transfer.

Tex. Gov't Code § 73.001. Although we typically exercise this authority to equalize the dockets of the courts of appeals, section 73.001 does not limit our transfer authority to that purpose. Under the jurisdictional scheme set out in the Government Code, the Sixth and Twelfth appellate districts overlap in six counties, including Rusk County. Tex. Gov't Code § 22.201(g), (m).[3] The statute does not specify any procedure for allocating appeals from these counties between the two appellate courts, and thus appellants are free to elect either appellate route.[4] The parties

---

1. Plaintiffs also filed a motion for partial new trial on March 9 challenging the jury findings in favor of Stanley, which the trial court denied that same day by written order.

2. The proper procedure for presenting a motion to transfer to this Court is as follows: The party requesting a transfer should file a copy of the motion to transfer in each of the two courts of appeals, asking that, when the motion is forwarded to the Supreme Court, each court of appeals advise the Supreme Court in writing whether it has any objection to the proposed transfer. Any briefs in favor of the proposed transfer should also be filed in each court of appeals and forwarded with the transfer motion. We will then have the motion, the briefs, and the comments of the two courts of appeals in determining whether to grant the motion to transfer.

3. Even though the Constitution provides that "[t]he state shall be *divided* into courts of appeals districts," Tex. Const. art. V, § 6 (emphasis supplied), twenty-two counties are located in two appellate districts and one, Brazos County, is located in three. *See* Tex. Gov't Code § 22.201. The first appellate overlap, created in 1934, involved Hunt County. After that county was transferred from the Fifth District (Dallas) to the Sixth District (Texarkana) in 1927, it was also restored to the Fifth Court seven years later, thus placing it in two districts. Act of September 24,

1934, 43rd Leg., 3rd C.S., ch. 31, 1934 Gen.Laws 54.

No further overlaps were created until 1963, when the seventeen-county Twelfth Court of Civil Appeals was established in Tyler. Nine of the counties comprising the new district were removed from their former districts, but the other eight were also left in their previous districts. Act of May 7, 1963, 58th Leg., R.S., ch. 198, § 2, 1963 Gen.Laws 539. Gregg, Hopkins, Panola, Rusk, Upshur and Wood Counties remained in the Sixth District as well as the Twelfth, while Kaufman and Van Zandt Counties remained in the Fifth District as well as the Twelfth. *Id.*

The final overlaps were created in 1967. Because of the population and litigation growth in the Houston area and the then constitutional limitation of appellate courts to three justices, the Legislature established an entirely new court, the Fourteenth Court of Appeals, covering the same counties as the existing First Court. Act of June 18, 1967, 60th Leg., R.S., ch. 728, § 2, 1967 Tex.Gen.Laws 1953. In addition to the thirteen counties already covered, the Legislature added Brazos County to both courts, while also leaving it in the Tenth District. Even though the people amended the Constitution in 1978 to allow larger appellate courts, the dual appellate court system in the state's most populous area remains.

4. Appellants control the choice of forum except in the First and Fourteenth Districts, where cases

do not dispute, however, that all challenges to the trial court's judgment should be heard together in one appellate proceeding. We must decide which court should retain jurisdiction under the circumstances of this case.

Ford contends that good cause exists to transfer the plaintiffs' appeal to defendant's chosen venue under section 73.001 because Ford's appeal is "primary." That is, Ford is appealing a judgment against it in excess of $37 million, while plaintiffs are appealing loss of consortium claims which, according to Ford, are worth at most a small percentage of that amount. Plaintiffs' other appellate complaint, Ford contends, could at best result in the extension of liability to another party, Stanley, but could not increase the damage award. *See generally Duncan v. Cessna,* 665 S.W.2d 414, 432 (Tex.1984).

■ Plaintiffs, on the other hand, respond simply that their venue selection should control because they were the first to perfect an appeal. We agree. The general common law rule in Texas is that "the court in which suit is first filed acquires dominant jurisdiction to the exclusion of other coordinate courts." *Curtis v. Gibbs,* 511 S.W.2d 263, 267 (Tex.1974); *Bailey v. Cherokee County Appraisal Dist.,* 862 S.W.2d 581, 586 (Tex.1993); *Mower v. Boyer,* 811 S.W.2d 560, 563 n. 2 (Tex.1991). This rule is grounded on the principles of comity, convenience, and the need for an orderly procedure in resolving jurisdictional disputes. *See Wyatt v. Shaw Plumbing Co.,* 760 S.W.2d 245, 248 (Tex. 1988).

■ Although the rule of dominant jurisdiction has most often been applied at the trial court level, the rationale underlying the rule also applies to appeals in those instances where the Legislature has not otherwise provided an allocation mechanism. Once the first appeal is perfected, the court of appeals acquires jurisdiction over the entire controversy. *See Ammex Warehouse Co. v. Arch-*

*er,* 381 S.W.2d 478, 482 (Tex.1964). We have recognized that a court of appeals "will not be permitted to interfere with the previously attached jurisdiction of another court of coordinate power." *Morrow v. Corbin,* 122 Tex. 553, 62 S.W.2d 641, 645 (1933). In *Ward v. Scarborough,* 236 S.W. 441 (Tex. Comm'n App.1922, judgm't adopted), the court applied an analogous rule to uphold the court of appeals' dismissal of a writ of error appeal that had been filed after the opposing party had perfected an ordinary appeal from the same judgment. Even though the writ of error and ordinary appeal were both proper methods of challenging the judgment, and the appellant's writ of error raised different complaints from those raised in the ordinary appeal, the court concluded that the first to be filed should control:

> The right of the Scarboroughs and Ward, respectively, to select the proceeding by which the case should be carried to the Court of Civil Appeals for review was equal. Either had a right to invoke the speedier process of appeal, and, when so invoked, the other had no right to complain. Either had the right, the other remaining inactive, to adopt the slower process by writ of error. Their rights being equal, priority in making the election and acting thereon should prevail.

236 S.W. at 444.

■ In the trial court context, we have recognized three exceptions to the rule of dominant jurisdiction: 1) where a party has engaged in inequitable conduct that estops him or her from asserting prior active jurisdiction; 2) where there is a lack of persons to be joined if feasible, or the power to bring them before the court; and 3) where there is a lack of intent to prosecute the first proceeding. *See Wyatt v. Shaw Plumbing Co.,* 760 S.W.2d 245, 248 (Tex.1988). Ford argues that the third exception should apply here. It contends that plaintiffs filed their appeal as a pretext merely to establish venue in the

have been randomly assigned since 1983, *see* Tex. Gov't Code § 22.202(h), and in Hopkins County, where criminal cases have been randomly divided between the Sixth and Twelfth Districts since 1993. *See* Tex. Gov't Code §§ 22.207(c), 22.213(d). When the original overlap was created in Hunt County, the Legislature

provided that appeals were to go to different courts in different calendar halves of the year. Act of Sept. 24, 1934, 43rd Leg., 3rd C.S., ch. 31, § 2, 1934 Tex.Gen.Laws 54. Though never formally repealed, this procedure was abandoned and has not been replicated elsewhere.

Sixth Court of Appeals. Plaintiffs, however, have timely perfected their appeal, and there is no evidence that they do not intend to prosecute their appeal. Although plaintiffs prevailed on their most significant claims, they nonetheless have the right to appeal those matters on which they did not prevail. As noted in *Wood,* where the parties have an equal right of appeal, "priority in making the election and acting thereon should prevail." 236 S.W. at 444.

■ In the trial court context, we have at times indicated that the second-filed suit should be dismissed, *see Mower v. Boyer,* 811 S.W.2d 560, 563 n. 2 (Tex.1991); *Curtis v. Gibbs,* 511 S.W.2d 263, 267 (Tex.1974); *Cleveland v. Ward,* 116 Tex. 1, 285 S.W. 1063 (1926), while on at least one occasion we have indicated that it should merely be abated pending disposition of the first suit. *See Wyatt v. Shaw Plumbing Co.,* 760 S.W.2d 245, 248 (Tex.1988). In the appellate context, we believe abatement is the more appropriate remedy. This will protect the second appellant's right to proceed in its chosen forum if at any time it becomes apparent that the appellant filed the first appeal merely as a sham, with no intent to prosecute the appeal. If for some reason the second appellant desires a transfer to protect a point of error that was not properly raised as a cross-point in the first appeal, the second appellant may make an appropriate motion to this Court.

Ford further argues that the common-law rule of dominant jurisdiction must yield to section 73.001, which vests this Court with statutory authority to transfer cases for good cause. We conclude, however, that in determining whether good cause exists under the circumstances presented here, the rule of dominant jurisdiction should control. As noted, this rule promotes comity among the courts of appeals and is straightforward in its application.

■ Ford finally argues that the appeal should be transferred to the Twelfth Court of Appeals because that court has previously decided two mandamus proceedings arising from this lawsuit. These mandamus actions, however, were distinct, original proceedings that have since been concluded. Although the Twelfth Court of Appeals may have some familiarity with the factual background of the case, this is not a sufficient reason to allow the filing of an original proceeding to control the venue for a later appeal from the trial court's final judgment. *Cf. Avis Rent A Car System, Inc. v. Advertising and Policy Committee of the Avis Rent A Car System,* 751 S.W.2d 257, 258 (Tex.App.—Houston [1st Dist.] 1988, no writ) (filing of original mandamus proceeding does not control venue of later appeal as between the First and Fourteenth appellate districts, as such appeal must be assigned by lot). Further, the Twelfth Court of Appeals has submitted written comments to this Court in connection with the motion for transfer stating that it "does not have an 'invaluable knowledge base' of this litigation." The Twelfth Court notes that the earlier mandamus proceedings involved limited pre-trial discovery and procedural issues, and that the court lacks any knowledge of the proceedings during the thirteen day trial on the merits. Although this Court can consider prior familiarity with a case in deciding whether to order an exception to a docket equalization order, we decline to do so where both parties have an equal right under the law to proceed in the forum of their choice.

Before closing, we note that this question arises only because the Legislature has chosen to create overlaps in the State's appellate districts. We have been unable to find any other state in the union which has created geographically overlapping appellate districts. Most of the reasons which explain such overlaps, such as political expediency, local dissatisfaction with the existing judiciary, or an expanded base of potential judicial candidates, would at most justify the temporary creation of such districts, not permanent alignments.

On the other hand, the problems created by overlapping districts are manifest. Both the bench and bar in counties served by multiple courts are subjected to uncertainty from conflicting legal authority. Overlapping districts also create the potential for unfair forum shopping, allow voters of some counties to select a disproportionate number of justices, and create occasional jurisdictional

conflicts like this one. The Court thus adheres to its view that overlaps in appellate districts are disfavored. *See* 1995 Report of the Supreme Court to the Legislature Regarding Appellate Courts ("The primary recommendation of the Court at this time is to eliminate the current jurisdictional overlaps that occur between two or more Courts of Appeals in ten counties, and in one instance, in three counties."); 1993 Report of the Supreme Court to the Legislature Regarding Appellate Courts ("No county should be in more than one appellate district."); 1986 Report on the Reapportionment of the Courts of Appeals Districts as adopted by the Supreme Court of Texas and the Texas Judicial Council ("All current overlapping districts should be eliminated except for the 1st and 14th districts which are coterminous.").

For the foregoing reasons, the motion to transfer is denied.