

**NUMBER 13-09-173-CR**

**COURT OF APPEALS**

**THIRTEENTH DISTRICT OF TEXAS**

**CORPUS CHRISTI - EDINBURG**

---

TREVER NORMAN,                                                                    **Appellant,**

**v.**

THE STATE OF TEXAS,                                                              **Appellee.**

---

**On appeal from the 379th District Court
of Bexar County, Texas.**

---

**MEMORANDUM OPINION**

**Before Justices Rodriguez, Benavides, and Vela
Memorandum Opinion by Justice Vela**

A Bexar County Grand Jury indicted appellant, Trever Norman, for murder. *See* TEX. PENAL CODE ANN. § 19.02(b)(1), (2) (Vernon 2003). A jury found him guilty and assessed punishment at eighty-five years' imprisonment. By five issues, Norman

challenges the jurisdiction of this Court and contends that the trial court erred in denying his motion to suppress evidence. We affirm.

## I. FACTUAL BACKGROUND

On December 17, 2006, San Antonio police officer Eric Moreno responded to a "shots fired" call at 351 Dorie Street in San Antonio. Officer Moreno testified that at that location, the body of Channell Dixon was discovered wrapped in a carpet, placed in a barrel, and hidden under a tarp. Shortly after the body was discovered, appellant approached the officers conducting the investigation and began asking them about his uncle, who lived in the Dorie Street residence. Officer Moreno stated that appellant was asked to "stand by because he was . . . going to be [the] only witness to the—offense." At this point, appellant was compliant and was not placed under arrest or placed in handcuffs. He was seated in a police car and later taken to the police station where Detective Frank Garibay obtained his videotaped statement. Throughout the interview, appellant related different versions of where he was and what he saw. When Detective Garibay left the interview room, appellant made multiple phone calls. On one call to his grandmother, he asked several times to make sure that she told another individual what their story was, to make sure they "said the same thing."

### A. *Jackson v. Denno* hearing

During the guilt-innocence phase of appellant's trial, the trial court held a hearing, outside the jury's presence, regarding the voluntariness of appellant's videotaped statement. During the hearing, the State called two witnesses: Officer Ramsey Garcia and Detective Garibay. Officer Garcia testified that he was responsible for watching appellant at the crime scene. When he arrived at the scene, appellant was already seated in the back of a squad car. At that time, appellant was not wearing handcuffs, and Officer Garcia

2

did not consider him to be under arrest.  Later, Officer Garcia transported appellant to the police station at the request of Detective Garibay, because he "[didn't] believe [appellant] had a ride, and he needed to go down there for a statement."  On cross-examination, Officer Garcia stated that he believed appellant was free to go, yet it was his duty to alert his sergeant if appellant had attempted to leave.

Detective Garibay testified that at the outset of the interview, appellant was providing a voluntary statement and was not under arrest.  He further testified that about halfway through the interview, appellant was informed of his *Miranda* rights and arrested because some marihuana had been found in his belongings.  At that point, Detective Garibay asked appellant if he wanted to speak with an attorney, and appellant declined.  Detective Garibay testified that anyone, whether under arrest or not, can state they wish to speak with an attorney, but only an individual under arrest has a right to have an attorney afforded him.  He also testified to what he saw in the recording of the interview played at the hearing.  He stated that appellant had said that he did not want an attorney because it would require a longer wait, and that he did not want to "waste his time."

On cross-examination, Detective Garibay was questioned extensively about the length of the video-taped interview.  He explained that the length of time of the recording was approximately three hours, but that the actual interview with appellant was shorter, because Detective Garibay was also taking statements of other witnesses during that time.  Further, Garibay stated that he never made any threats to appellant and had no way of knowing if any threats were made by another officer.

Appellant testified for the limited purpose of the voluntariness of his statement. He stated that while in the police car, he asked to leave to take care of his dog, and that he was allowed to do so.  He stated, however, that he never thought he was free to leave on

3

his own accord, and he felt his trip to the police station was not voluntary, despite lacking his own transportation. He stated that a detective threatened that if he did not confess, he would be "looking at capital murder or the death penalty," but if he admitted to murder he was "looking at forty years." However, on cross-examination, appellant could not identify the detective who made the alleged threat. No additional testimony of any alleged threat was offered.

At the close of the suppression hearing, appellant's position was that the trip to the police station and the statement were not free or voluntary exercises of his rights. Defense counsel requested that "[a]t least until the portion of the tape where he's Mirandized and waives an attorney, we believe all the rest of it should be excluded. . . ." The trial court denied appellant's motion, and the recording of appellant's statement was later admitted into evidence. *See* Tex. Gov't Code. Ann. § 73.001 (Vernon 2005).

On appeal, the Texas Supreme Court transferred this case from the Fourth Court of Appeals to this Court.

## II. Discussion

### A. Custody Challenge

In his fourth and fifth issues, appellant complains that the trial court erred by denying the motion to suppress the recording of his interview at the police station. Although appellant was subsequently placed in custody and given his *Miranda* warnings at the police station after speaking with Detective Garibay, he asserts that he was in custody from the time he became involved at the scene. Appellant claims that he was not advised of or provided an opportunity to waive his right against self-incrimination as protected under the Fifth Amendment of the United States Constitution and in violation of article 38.22 of the Texas Code of Criminal Procedure. *See* U.S. Const. amend V; Tex. Code Crim. Proc.

4

art. 38.22. (Vernon 2005).

### 1. Standard of Review

Review of a trial court's ruling on a motion to suppress is under a bifurcated standard of review. *Carmouche v. State*, 10 S.W.3d 323, 327 (Tex. Crim. App. 2000). An appellate court gives almost total deference to the trial court's determination of historical facts supported by the record, particularly if the findings turn on witness credibility and demeanor. *State v. Ross*, 32 S.W.3d 853, 856 (Tex. Crim. App. 2000); *Guzman v. State*, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997). Mixed questions of law and fact that do not turn on the credibility or demeanor of a witness are reviewed *de novo*. *See Carmouche*, 10 S.W.3d at 327. When, as here, the trial court does not make explicit findings of fact, the reviewing court assumes the trial court made implicit findings necessary to support its ruling and reviews the evidence in the light most favorable to the ruling. *Id*. at 327-28. We will sustain the trial court's ruling if it is reasonably supported by the record and is correct on any theory of law applicable to the case. *Villarreal v. State*, 935 S.W.2d 134, 138 (Tex. Crim. App. 1996). In order to determine the voluntariness of a confession, a reviewing court will examine the totality of the circumstances. *Creager* v. *State*, 952 S.W.2d 852, 956 (Tex. Crim. App. 1997).

### 2. Applicable law

In determining whether a person was in custody, a court examines "all of the circumstances surrounding the interrogation, but the ultimate inquiry is simply whether there [was] a formal arrest or restraint on freedom of movement of the degree associated with a formal arrest." *Stansbury v. California*, 511 U.S. 318, 322 (1994). "The initial determination of custody depends on the objective circumstances of the interrogation, not on the subjective views harbored by either the interrogating officers or the person being

questioned." *Id*. at 323. Statements are custodial when peace officers initiate questioning "after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way." *Miranda v. Arizona*, 384 U.S. 436, 444 (1966). A custodial statement is not available for the prosecution's use "unless it demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination." *Id.* In Texas, four general situations may constitute custody: (1) when the suspect is physically deprived of freedom of action in any significant way; (2) when a peace officer tells him he cannot leave; (3) when peace officers create a situation that would lead a reasonable person to believe his freedom of movement has been significantly restricted; or (4) when there is no probable cause to arrest and peace officers do not tell him that he is free to leave. *Dowthitt v. State*, 931 S.W.2d 244, 255 (Tex. Crim. App. 1996).

### 3. Analysis

Here, appellant focuses his challenge on the first and third *Dowthitt* factors, namely that he was physically deprived of his freedom of action in a significant way and that peace officers created a situation that would lead a reasonable person to believe his freedom of movement had been significantly restricted. *See id*. at 255. As an initial indication of his custody, appellant points to the fact that he was asked to "stand by" and later seated in a police car at the crime scene. Additionally, appellant testified that neither at the crime scene nor the police station did he feel free to go. He argues that no reasonable person would have believed that he could leave the police station freely after being seated in a police car, transported to the police station, and interviewed extensively.

In determining whether a person is in custody, we must consider whether a reasonable man, *innocent of any crime*, would have considered himself in custody, not whether the particular defendant with his subjective knowledge, would have considered

6

himself in custody. *Dancy v. State*, 728 S.W.2d 772, 778 (Tex. Crim. App.1987) (emphasis added); *see Lerma v. State*, 172 S.W.3d 219, 226 (Tex. App.–Corpus Christi 2005, pet. ref'd). The evidence shows that appellant voluntarily involved himself in the investigation by approaching the scene and speaking to the officers. The record supports that he was seated in the police car while officers secured the scene and began their investigation. Appellant was not placed in handcuffs at the scene and was transported to the police station because he had no transportation of his own. If the circumstances show that the person is acting upon the invitation, urging or request of police officers, and not the result of force, coercion or threat, the act is voluntary and the person is not in custody. *Livingston v. State*, 739 S.W.2d 311, 327 (Tex. Crim. App. 1987). Though appellant's own testimony suggests that he was coerced into making a statement, the trial court was free to disbelieve any of appellant's testimony. *See Ross*, 32 S.W.3d at 855. At the police station, appellant remained un-handcuffed, was placed in an unlocked room, had free use of the telephone, and was given water and use of the facilities. Most importantly, at the outset of the interview, Detective Garibay told appellant he was not under arrest and that he was giving a voluntary statement. Given the totality of the circumstances, it is clear that that there was no significant deprivation of appellant's freedom of movement, and a reasonable person, innocent of any crime, would not consider himself in custody in this particular situation. We overrule issues four and five.

**B. Jurisdictional Challenge**

In appellant's first three issues, he challenges this Court's jurisdiction. First, he contends that chapter 73 of the Texas Government Code violates the Equal Protection Clause of the United States Constitution, because it does not give proper effect to the voters of Texas who elect the justices of the intermediate appellate courts. *See* U.S.

CONST. amend. XIV. TEX. GOV'T CODE ANN. § 73.001 (Vernon 2005). Second, appellant argues that this Court lacks jurisdiction over this appeal because the Texas Constitution and Chapter 73 of the Texas Government Code are in conflict. Finally, appellant claims this Court lacks jurisdiction over this appeal because the Texas Supreme Court's order of transfer is a void exercise of legislative authority over the judiciary in violation of the Separation of Powers provision contained in article II, section 1 of the Texas Constitution. *See* TEX. CONST. art. II § 1. He requests that we transfer this appeal back to the Fourth Court of Appeals.

### 1. Applicable law

The Texas Supreme Court may transfer cases to this Court, pursuant to section 73.001 of the Texas Government Code, "at any time that, in the opinion of the supreme court, there is good cause for transfer." TEX. GOV'T CODE ANN. § 73.001; *Arocha v. State*, No. 08-07-00108-CR 2009 WL 1883733, at *4 (Tex. App.–El Paso June 30, 2009), (mem op.) (not designated for publication), pet. dism'd improvidently granted, 2010 WL 2618421 (Tex. Crim. App. June 30, 2010).[1] Section 73.002 provides that the transferee court of appeals "has jurisdiction of the case without regard to the district in which the case originally was tried and to which it is returnable on appeal." TEX. GOV'T CODE ANN. § 73.002. Appellant argues his constitutional issues as challenges to our jurisdiction. Generally, a party is not required to preserve a challenge to the court of appeals' jurisdiction. *See Arocha*, 2009 WL 1883733, at *5. However, the Eighth Court of Appeals in *Arocha* concluded that constitutional jurisdictional challenges such as this must be

---

[1] The Court of Criminal Appeals granted discretionary review to determine whether the Eighth Court of Appeals erred in rejecting Arocha's jurisdictional arguments on the basis of a procedural default, however, upon reviewing the record, it concluded that granting Arocha's petition was improvident. *Arocha v. State*, (No. PD-1189-90) 2010 WL 2618421 (Tex. Crim. App. June 30, 2010).

preserved, because "[e]ven if Section 73.001 is unconstitutional as applied to [Arocha], we would not be divested of jurisdiction" under Section 73.002. *Id*.

The proper procedure for obtaining a transfer between appellate courts is by motion to the Texas Supreme Court. *See* TEX. GOV'T CODE ANN. § 73.001. The Texas Supreme Court has established the following procedure for a transfer:

> The party requesting transfer should file a copy of the motion to transfer in each of the two courts of appeals, asking that, when the motion is forwarded to the Supreme Court, each court of appeals advise the Supreme Court in writing whether it has any objection to the proposed transfer. Any briefs in favor of the proposed transfer should also be filed in each court of appeals and forwarded with the transfer motion. We will then have the motion, the briefs, and the comments of the two courts of appeals in determining whether to grant the motion to transfer.

*Id*. citing *Miles v. Ford Motor Co.*, 914 S.W.2d 135, 137 n.2 (Tex. 1995),

Failure to follow the established procedure results in failure to preserve complaints about the transfer of an appeal. *See id*.

The State contends that appellant failed to utilize the procedure for seeking a transfer of his appeal. Appellant's brief mentions a document in a footnote, that he urges was filed with the Texas Supreme Court, entitled "Special Appearance and Objection to Case Transfer of Case From Courts of Appeals," yet no copy of this document was included in the record. Regardless, from the title of the document we cannot discern if it serves in any way to comport with proper procedure for requesting a transfer. If appellant had followed the procedure and his motion had been granted, his complaints about the constitutionality of section 73.001 would be remedied. *Id*. Alternatively, if his motion were denied, this Court would be in a position to address the constitutional issues. *Id*. We conclude appellant did not follow the proper procedure requesting transfer and, therefore, his complaint is not preserved. We overrule appellant's first, second, and third issues.

9

### III. Conclusion

We affirm the judgment of the trial court.

ROSE VELA
Justice

Do not publish.
TEX. R. APP. P. 47.2(b).

Delivered and filed the
19th day of August, 2010.