

NUMBER 13-09-171-CR

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

DWIGHT DEWAYNE HINES,                                                **Appellant,**

**v.**

THE STATE OF TEXAS,                                                   **Appellee.**

### On appeal from the 290th District Court
### of Bexar County, Texas.

# MEMORANDUM OPINION

### Before Justices Rodriguez, Benavides, and Vela
### Memorandum Opinion by Justice Vela

Appellant, Dwight Dewayne Hines, was indicted for the offense of aggravated robbery, a first-degree felony. *See* TEX. PENAL CODE ANN. § 29.03(a)(2) (Vernon 2003). A jury found him guilty of the lesser-included offense of robbery, a second-degree felony. *See id*. § 29.02(a)(2), (b). After appellant pleaded true to the enhancement paragraph in

the indictment, the jury assessed punishment at thirty years' imprisonment. In six issues, appellant contends that: (1) the evidence was factually insufficient to support his conviction; (2) the trial court erred by failing to charge the jury on the lesser-included offense of theft; and (3) this Court lacks jurisdiction to consider this appeal. We affirm.[1]

## I. Factual Background

Barbara Ann Bates lived at the Cambridge Village Apartments in San Antonio, Texas. On the morning of March 26, 2008, she returned to the apartment complex after taking her granddaughter to school. Bates stopped at the complex's mailboxes, where she was approached by appellant, who told her that his car would not "crank" and that he needed "a boost." Bates got some booster cables from her apartment, and appellant connected them from her car to his car. While Bates sat in the driver's seat of her car with her window open, appellant tried unsuccessfully to start his car. After appellant put the booster cables in the trunk of Bates's car, he leaned over Bates as she sat in her car and said, "I hate to tell you this, but this is a robbery." Bates testified that when she "glanced down," she "saw a silver blade, you know, like in my side, you know, right there." She stated that "after I looked down and saw that, that's when I—you know, I got scared." She also testified that appellant was pointing the blade "right in my side area. . . ." Appellant demanded money, and when Bates told him that she did not have any, he told her, "[W]ell, you're going to go back in the apartment and you're going to get something and you're going to bring me something out of there." Bates told him she did not have anything to give him. After she said this, appellant reached into her car and took her cell phone, her purse,

---

[1]This appeal was transferred to this Court from the Fourth Court of Appeals by order of the Texas Supreme Court. *See* TEX. GOV'T CODE ANN. § 22.220 (Vernon 2004) (delineating the jurisdiction of appellate courts); TEX. GOV'T CODE ANN. § 73.001 (Vernon 2005) (granting the supreme court the authority to transfer cases from one court of appeals to another at any time that there is "good cause" for the transfer).

2

which contained her driver's license, and took the keys from her ignition. Bates testified that she did not care what he took "[b]ecause I was afraid I might have got harmed, you know." Appellant got into his car, and as he backed out, Bates saw that his front license plate was covered with paper but his rear license plate was uncovered. Bates called 9-1-1 and gave appellant's license-plate number to the police.

About 10:50 a.m. that day, Officer James Phelan was on patrol when he saw appellant's vehicle parked at a street corner. At that time, the vehicle was unoccupied. Officer Phelan circled the block, and when the vehicle came into view, he saw appellant getting into its driver's seat. Officer Phelan arrested appellant at that time. A short time later, the police asked Bates to come to the Wheatley Courts in San Antonio. There, she saw appellant sitting in a police car and identified him as the person who robbed her. Bates got her cell phone and driver's license back that day and testified that after the robbery, "I couldn't sleep for a while, because I was scared. And any time anybody would walk up on me, I would have a fear come over me because—you know, because of what had happened to me."

When defense counsel cross-examined Bates, he asked her, "And what you said before was that he [appellant] put the knife into your side. Is that correct?" To this, she replied, "Yes, sir, it was in my side here while he was leaning over in the car." She testified that she did not put that in her written statement, which she provided to the police. When defense counsel asked her, "And you couldn't tell, you couldn't be sure if it was a knife that [appellant] had[?]", she replied, "I looked down and I saw a silver blade." Bates again testified that she did not put that in her written statement to the police. When defense counsel asked her, "And that statement that you gave, that was the first time you told anybody that there was a knife, Isn't that right?", she said in reply, "What do you mean the

3

first time I told anybody?  I told the police officer."  Bates had a theft charge pending against her at the time of trial.

On redirect-examination, when the prosecutor asked Bates, "So, he's [appellant] reaching across you with one hand, and the knife is in the other hand?", she replied, "Yes." When the prosecutor stated to her, "Now, that's what your statement says", she replied, "Yes."  The prosecutor also asked her, "[F]rom your memory, where was that knife?", she said, "In my side area."  Referring Bates to her written statement that she gave to the police, the prosecutor asked her, "And then there's another point towards the bottom. Right here.  You mention in another point that the defendant had a knife, correct?"  She said, "Yes."  Next, the prosecutor asked her, "And what your statement says about the knife being in the other hand, that's not inconsistent with what you said earlier to the jury." To this question, she replied, "No, sir, it's not inconsistent."

Officer Joseph Moore interviewed Bates at the crime scene.  He testified that Bates "was visibly shaken and upset" and she:

> told me that she had just been robbed.  She said that while she had gone to her mailbox she was approached by a young man who asked her for a jump, and she agreed to do that for him.  And when she went back to her car, she said that his car was already positioned in front of hers.  And she was about to give him the jump to his car when she was approached as she was sitting in the car by him.
>
> She told me that he had put a knife in front of her and reached in and took her purse and asked her if she had anything else.  She was visibly shaken up by this, and she said she didn't have anything else that was valuable.  And then he was about to force her to go into her apartment, and she said he abruptly stopped because he started remarking to himself that there's too many people around.  And then he jumped into a car and left, and she got out and was able to call the police.

On cross-examination, defense counsel asked Officer Moore, "You mentioned that she [Bates] said that he had held a knife in front of her.  Is that correct?"  To this, he

4

replied, "Yes, sir." Officer Moore testified that he did not find a knife at the scene.

After the robbery, crime-scene technician, Archie Anz, interviewed Bates at the crime scene to determine where he should be looking for latent fingerprints. He collected latent fingerprints from Bates's car on the inside and outside of the trunk lid, and the exterior of the hood. On cross-examination, he testified that he did not "recall" Bates saying that a knife was used.

Vernon Ginn, a fingerprint examiner, compared appellant's known fingerprints with the latent fingerprints collected from Bates's vehicle. He testified that appellant's left thumb print was found on the hood and that appellant's left palm print was found on the exterior of the trunk lid.

The defense did not call any witnesses to testify at the guilt-innocence phase.

## II. DISCUSSION

### A. Sufficiency of the Evidence

In his second issue, appellant challenges the factual sufficiency of the evidence to support his conviction.

#### 1. Standard of Review

In a factual-sufficiency review, the only question to be answered is: "Considering all of the evidence in a neutral light, was a jury rationally justified in finding guilt beyond a reasonable doubt?" *Grotti v. State*, 273 S.W.3d 273, 283 (Tex. Crim. App. 2008). Evidence can be deemed factually insufficient in two ways: (1) "the evidence supporting the conviction is 'too weak' to support the factfinder's verdict;" or (2) "considering conflicting evidence, the factfinder's verdict is 'against the great weight and preponderance of the evidence.'" *Laster v. State*, 275 S.W.3d 512, 518 (Tex. Crim. App. 2009) (quoting *Watson v. State*, 204 S.W.3d 404, 414-15 (Tex. Crim. App. 2006)). When a court of appeals

conducts a factual-sufficiency review, it must defer to the jury's findings. *Id*. The court of criminal appeals has "set out three 'basic ground rules' implementing this standard." *Id*. (quoting *Watson*, 204 S.W.2d at 414). First, the appellate court must consider all of the evidence in a neutral light, as opposed to in a light most favorable to the verdict. *Id*. Second, the appellate court "may only find the evidence factually insufficient when necessary to 'prevent manifest injustice.'" *Id*. (quoting *Cain v. State*, 958 S.W.2d 404, 407 (Tex. Crim. App. 1997)). Third, the appellate court must explain why the evidence is too weak to support the verdict or why the conflicting evidence greatly weighs against the verdict. *Id*. Although the verdict is afforded less deference during a factual-sufficiency review, an appellate court is not free to "override the verdict simply because it disagrees with it." *Id*.

### 2. Applicable Law

Our review of a factual-sufficiency challenge should be examined under the principles of review for a hypothetically correct jury charge. *Grotti,* 273 S.W.3d at 281. "'Such a charge [is] one that accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof, or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried.'" *Villarreal v. State*, 286 S.W.3d 321, 327 (Tex. Crim. App. 2009) (quoting *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997)).

Section 29.02 defines robbery in the following language: "(a) A person commits an offense if, in the course of committing theft as defined in Chapter 31 and with intent to obtain or maintain control of the property, he: . . . (2) intentionally or knowingly threatens or places another in fear of imminent bodily injury or death." TEX. PENAL CODE ANN. § 29.02(a)(2). Section 29.01 defines "in the course of committing theft" as "conduct that

occurs in attempt to commit, during the commission, or in immediate flight after the attempt or commission of theft." *Id*. § 29.01(1). A person commits theft if he unlawfully appropriates property with the intent to deprive the owner of that property. *Id*. § 31.03(a) (Vernon Supp. 2009).

A person acts intentionally when it is his conscious objective or desire to engage in the conduct that causes the result. *Id*. § 6.03(c) (Vernon 2003). A person acts knowingly when he is aware of the nature of his conduct or that the circumstances surrounding his conduct exist. *Id*. § 6.03(b). A person's knowledge and intent may be inferred from the "acts, words, and conduct of the accused." *Hart v. State*, 89 S.W.3d 61, 64 (Tex. Crim. App. 2002).

To constitute robbery, there must be violence or intimidation of such nature that the victim is put in fear. *Cranford v. State*, 377 S.W.2d 957, 958 (Tex. Crim. App. 1964). The culprit need not actually possess a weapon to be convicted of robbery. *Id*. at 959. Threats may be communicated through action, conduct, or words. *Richardson v. State*, 834 S.W.2d 535, 537 (Tex. App.–Houston [1st Dist.] 1992, pet. ref'd). The victim's fear must arise from the accused's conduct, rather than mere timidity of the victim. *Cranford*, 377 S.W.2d at 959. The statute is satisfied when the victim reasonably believes she will be injured if she does not comply with the robber's demands. *Id*.; *see also Devine v. State*, 786 S.W.2d 268, 270 (Tex. Crim. App. 1989). Thus, our inquiry is whether appellant's words and conduct were sufficient to place a reasonable person in the victim's circumstances in fear of imminent bodily injury. *See Welch v. State*, 880 S.W.2d 225, 226-27 (Tex. App.–Austin 1994, no pet.); *Williams v. State*, 827 S.W.2d 614, 616 (Tex. App.–Houston [1st Dist.] 1992, pet. ref'd).

### 3. Analysis

In considering whether a reasonable person in Bates's circumstances would be placed in fear, we note that there was evidence that she was alone in her car with her driver's side window rolled down when appellant leaned over her, and while pointing a silver blade in her "side area," told her, "[T]his is a robbery." He demanded money, and when she told him she did not have any money or anything to give him, he reached into her car and took her purse, cell phone, and car keys. Thus, a reasonable person in Bates's circumstances could have deduced that appellant's demand for money, combined with his conduct of pointing the blade at her side area, constituted a threat of imminent bodily injury.

Bates testified that she was "scared" and did not care what he took "[b]ecause I was afraid I might have got harmed, you know." She testified that after the incident, she "couldn't sleep for a while, because I was scared. And any time anybody would walk up on me, I would have a fear come over me. . . ." A jury may find fear from a menacing glance or a hand gesture, even when no verbal threats are made. *See Williams v. State*, 808 S.W.2d 703, 706 (Tex. App.–Tyler 1991, no pet.). Under the "placed in fear" language contained in penal code section 29.02, the factfinder may conclude that an individual was "placed in fear" in circumstances when no actual threats are conveyed. *See Williams*, 827 S.W.2d at 616. Regardless of whether Bates was also scared after appellant took her property, she testified she was scared when she saw the silver blade and he demanded her money. Thus, the jury could believe that appellant's actions and words were calculated to and did involve the requisite fear, and the jury was free to make this determination. *See Williams*, 827 S.W.2d at 617. We conclude that a rational trier of fact could have found appellant's conduct was sufficient to place Bates in fear of imminent bodily injury, a fear

8

that in reason and common experience would have caused her to part with her property. Accordingly, considering all the evidence neutrally, we further conclude that the jury's verdict is not irrational, clearly wrong or manifestly unjust, or against the great weight and preponderance of the evidence of the conflicting evidence. Issue two is overruled.

## B. Lesser-Included Offense

In issue one, appellant contends the trial court erred by denying his request for an instruction on the lesser-included offense of theft. An offense is considered a lesser-included offense if "it is established by proof of the same or less than all the facts required to establish the commission of the offense charged[.]" TEX. CODE CRIM. PROC. ANN. art. 37.09(1) (Vernon 2006). In determining if the court should charge the jury on a lesser offense, we apply a two-step analysis. *Segundo v. State*, 270 S.W.3d 79, 90 (Tex. Crim. App. 2008). First, we compare "the elements of the offense as they are alleged in the indictment or information with the elements of the potential lesser-included offense." *Hall v. State*, 225 S.W.3d 524, 535-36 (Tex. Crim. App. 2007). "Second, we decide if there is some evidence in the record from which a rational jury could acquit the defendant of the greater offense while convicting him of the lesser-included offense." *Segundo*, 270 S.W.3d at 90-91. "The second step in the analysis should ask whether there is evidence that supports giving the instruction to the jury. *Hall*, 225 S.W.3d at 536. A defendant is entitled to a lesser-included-offense instruction when "'the proof for the offense charged includes the proof necessary to establish the lesser-included offense and there is some evidence in the record that would permit a jury rationally to find that if the defendant is guilty, he is guilty only of the lesser-included offense.'" *Id*. (quoting *Bignall v. State*, 887 S.W.2d 21, 23 (Tex. Crim. App. 1994)). In this step of the analysis, anything more than a scintilla of evidence may be sufficient to entitle an accused to a lesser charge. *Id*. The evidence

9

must establish the lesser-included offense as a valid, rational alternative to the charged offense. *Segundo*, 270 S.W.3d at 91; *Hall*, 225 S.W.3d at 536.

The indictment alleged, in relevant part, that appellant

> while in the course of committing theft of property and with intent to obtain and maintain control of said property, did intentionally and knowingly threaten and place [the victim] in fear of imminent bodily injury and death, and the defendant did use and exhibit a deadly weapon, to-wit: A KNIFE, THAT IN THE MANNER OF ITS USE AND INTENDED USE WAS CAPABLE OF CAUSING DEATH AND SERIOUS BODILY INJURY:

A person commits theft "if he unlawfully appropriates property with intent to deprive the owner of property." TEX. PENAL CODE ANN. § 31.03(a) (Vernon Supp. 2009). Comparing the elements of aggravated robbery as charged here with the statutory elements of theft, we conclude the elements of theft are included expressly within the proof necessary to establish aggravated robbery. *Hall*, 225 S.W.3d at 535-36; *see also Campbell v. State*, 571 S.W.2d 161, 162 (Tex. Crim. App. 1978) (noting that theft is a lesser-included offense of aggravated robbery). The indictment specifically charged appellant while "in the course of committing theft," implicating the necessity of proof of those elements. *See Earls v. State*, 707 S.W.2d 82, 84 (Tex. Crim. App. 1986); *see also* TEX. PENAL CODE ANN. § 29.01(1) (Vernon Supp 2009) (defining "in the course of committing theft" as "conduct that occurs in an attempt to commit, during the commission, or in immediate flight after the attempt or commission of theft"). Thus, appellant's complaint satisfies the first prong of the test. *Hall*, 225 S.W.3d at 535-36.

The second step requires us to determine if there is some evidence that would permit a rational jury to find that appellant is guilty of the lesser offense but not guilty of the greater offense. *See id.* at 536. Because theft is a lesser-included offense of aggravated robbery, appellant would be entitled to a jury instruction only if there is some evidence that

10

would permit a rational jury to find that he is guilty of theft but not guilty of aggravated robbery. *See id.* In other words, the question is whether there is any evidence that, if believed, would eliminate the threat component of the proof required for an aggravated robbery conviction.

Bates testified that appellant pointed a silver blade in her "side area." She also testified that she was scared and that she did not care what he took "[b]ecause I was afraid I might have got harmed, you know." Unlike *Campbell v. State*, 571 S.W.2d 161, 162 (Tex. Crim. App. 1978) (op. on reh'g), in which the defendant testified that only a theft was committed, and therefore, the court held that the trial court should have charged the jury on the lesser-included offense of theft, there is no evidence in the record from which a rational jury could find that appellant was guilty only of theft. Because the evidence fails to show that appellant could be guilty of only theft, the trial court properly denied the requested instruction on the lesser-included offense of theft. *See* TEX. CODE CRIM. PROC. ANN. art. 37.09(1); *Hall*, 225 S.W.3d at 535. Issue one is overruled.

## C. Jurisdiction

In issues three through six, appellant challenges this Court's jurisdiction over his appeal. He contends that chapter 73 of the Texas Government Code violates the Equal Protection Clause of the United States Constitution, because it does not give proper effect to the voters of Texas who elect the justices of the intermediate appellate courts. *See* U.S. CONST. amend. XIV; TEX. GOV'T CODE ANN. § 73.001 (Vernon 2005). He also argues that this Court lacks jurisdiction over his appeal because the Texas Supreme Court's order of transfer is unconstitutional under the Texas Constitution due to a conflict between the Texas Constitution and Chapter 73 of the Texas Government Code. He further argues that this Court lacks jurisdiction over his appeal because the order of transfer violates the Equal

11

Protection and Due Course of Law provisions of the Texas Constitution and is a void exercise of legislative authority over the judiciary in violation of the Separation of Powers provision contained in article II, section 1 of the Texas Constitution. *See* TEX. CONST. art. II § 1. He requests that we transfer this appeal back to the Fourth Court of Appeals.

The Texas Supreme Court may transfer cases to this Court, pursuant to section 73.001 of the Texas Government Code, "at any time that, in the opinion of the supreme court, there is good cause for transfer." TEX. GOV'T CODE ANN. § 73.001.[2] Section 73.002 of the government code provides that the transferee court of appeals "has jurisdiction of the case without regard to the district in which the case originally was tried and to which it is returnable on appeal." TEX. GOV'T CODE ANN. § 73.002. Appellant argues his constitutional issues as challenges to our jurisdiction. Generally, a party is not required to preserve a challenge to the court of appeals' jurisdiction. *See; e.g., Arocha v. State*, No. 08-07-00108-CR, 2009 WL 1883733, at *5 (Tex. App.–El Paso June 30, 2009) (mem op.) (not designated for publication; *pet. dism'd improvidently granted*, 2010 WL 2618421 (Tex. Crim. App. June 30, 2010). However, the Eighth Court of Appeals in *Arocha* concluded that constitutional jurisdictional challenges such as this must be preserved, because "[e]ven if Section 73.001 is unconstitutional as applied to [Arocha], we would not be divested of jurisdiction" under Section 73.002. *Id*.

The proper procedure for obtaining a transfer between appellate courts is by motion to the Texas Supreme Court. *See* TEX. GOV'T CODE ANN. § 73.001. The Texas Supreme Court has established the following procedure for a transfer:

---

[2]*See also Arocha v. State*, No. 08-07-00108-CR, 2009 WL 1883733, at *4 (Tex. App.–El Paso June 30, 2009), (mem op.) (not designated for publication) *pet. dism'd improvidently granted*, 2010 WL 2618421 (Tex. Crim. App. June 30, 2010). In *Arocha*, the Court of Criminal Appeals granted discretionary review to determine whether the Eighth Court of Appeals erred in rejecting Arocha's jurisdictional arguments on the basis of a procedural default; however, upon reviewing the record, it concluded that granting Arocha's petition was improvident. *Arocha v. State*, No. PD-1189-90, 2010 WL 2618421 (Tex. Crim. App. June 30, 2010).

The party requesting transfer should file a copy of the motion to transfer in each of the two courts of appeals, asking that, when the motion is forwarded to the Supreme Court, each court of appeals advise the Supreme Court in writing whether it has any objection to the proposed transfer. Any briefs in favor of the proposed transfer should also be filed in each court of appeals and forwarded with the transfer motion. We will then have the motion, the briefs, and the comments of the two courts of appeals in determining whether to grant the motion to transfer.

*Id*. (citing *Miles v. Ford Motor Co.*, 914 S.W.2d 135, 137 n.2 (Tex. 1995)). Failure to follow the established procedure results in failure to preserve complaints about the transfer of an appeal. *See id*.

The State contends that appellant failed to utilize the procedure for seeking a transfer of his appeal. If appellant had followed the required procedure by filing a motion to transfer, his complaints about the constitutionality of section 73.001 would be remedied. *Id*. Alternatively, if his motion to transfer was denied, this Court would be in a position to address the constitutional issues. *Id*. We conclude appellant did not follow the proper procedure requesting transfer, and, therefore, his complaint is not preserved. We overrule issues three through six.

### III. Conclusion

We affirm the trial court's judgment.

ROSE VELA
Justice

Do not publish.
TEX. R. APP. P. 47.2(b).

Delivered and filed the
19th day of August, 2010.