**Affirmed in Part, Reversed and Remanded in Part, and En Banc Majority, Concurring, and Dissenting Opinions filed December 20, 2011.**



In The

# 𝔉𝔬𝔲𝔯𝔱𝔢𝔢𝔫𝔱𝔥 𝔠𝔬𝔲𝔯𝔱 𝔬𝔣 𝔄𝔭𝔭𝔢𝔞𝔩𝔰

---

## NO. 14-09-01081-CV

---

**ROSSCER CRAIG TUCKER, II, Appellant**

**V.**

**LIZABETH THOMAS, Appellee**

---

**On Appeal from the 312th District Court
Harris County, Texas
Trial Court Cause No. 2003-55104**

---

## EN BANC CONCURRING OPINION

Today this court, sitting en banc, upholds its decision in *Hardin v. Hardin* and holds that under the Family Code, the trial court in a non-enforcement modification suit may order a parent to pay, as additional child support, reasonable attorney's fees for legal services benefitting the children. This holding means that a split of authority persists on this issue between this court and the other Houston-based court of appeals. This unwelcome consequence of today's decision shines a light on the vexing problems

inherent in the unique jurisdictional scheme governing Texas's intermediate appellate courts.

The Texas court system is the only court system in the United States that has intermediate appellate courts whose geographical jurisdiction overlaps.[1] The First Court of Appeals District and the Fourteenth Court of Appeals District both are composed of the same ten counties.[2] A high volume of litigation in this ten-county region, which includes one of the nation's largest metropolitan areas, fuels a big appellate case load. In cases in which there has been no prior appeal, appeals from these ten counties are randomly assigned between the First Court and the Fourteenth Court. Sometimes this court and our esteemed sister court disagree about the law. The case under review is a prime example of such a conflict. For over seven years there has been a conflict between our opinion in *Hardin* and the First Court's opinion in *In re Moers*.[3]

Under the Texas Rules of Appellate Procedure, the method for resolving such a split is review by the Supreme Court of Texas.[4] Unlike the Texas Court of Criminal Appeals, which has the power to review a court of appeals decision on its own motion,[5] the Supreme Court of Texas may review a court of appeals decision only if a party timely files a petition for review.[6] In *Moers*, *Hardin*, and almost all of the subsequent cases addressing this issue, no party filed a petition for review in the Supreme Court of Texas, and the high court had no opportunity to resolve this unfortunate split between the two Houston-based courts of appeals. As long as a conflict persists between these two

---

[1] *See Miles v. Ford Motor Co.*, 914 S.W.2d 135, 139 (Tex. 1995).

[2] *See* TEX. GOV'T CODE ANN. 22.201 (West Supp. 2010). These ten counties are the counties of Austin, Brazoria, Chambers, Colorado, Fort Bend, Galveston, Grimes, Harris, Waller, and Washington. *See* Tex. Gov't Code Ann. 22.201.

[3] *See Hardin v. Hardin*, 161 S.W.3d 14, 25–26 (Tex. App.—Houston [14th Dist.] 2004), *judgm't vacated, op. not withdrawn*, No. 14-03-00342-CV, 2005 WL 310076, at *1 (Tex. App.—Houston [14th Dist.] Feb. 10, 2005, no pet.) (mem. op.); *In re Moers*, 104 S.W.3d 609, 611–12 (Tex. App.—Houston [1st Dist.] 2003, no pet.).

[4] *See* TEX. R. APP. P. 53.1, 56.1.

[5] *See* TEX. R. APP. P. 66.1, 67.1.

[6] *See* TEX. R. APP. P. 53.1, 53.7.

appellate courts, serious and recurring problems abound for trial courts in the ten counties within the geographical jurisdiction of these courts, as well as for the lawyers and parties who litigate in this region. The most troubling consequence of Texas's peculiar jurisdictional regime is the difficult burden it places on litigants and their lawyers who, at times, must make important and costly litigation or settlement decisions on pending cases in which the outcome likely will turn entirely on the appellate court to which the appeal is randomly assigned. Rather than make decisions based on an evaluation of the strength of the case, litigants caught in split-of-authority cases must proceed blindly with the hope that their case will randomly fall in the court that has the more favorable rule.

The trial judges face a similar dilemma. In cases involving an issue upon which there is an unresolved disagreement between the Houston-based courts of appeals, there is no apparent basis for determining which precedent is binding on the trial court under the doctrine of vertical stare decisis. Despite at least two prior opinions from a court of appeals in whose district the trial court sits, the trial court has no mandatory precedent to apply and no clear basis for determining which of the two conflicting rules to follow. The trial judge's ruling will be held to be correct or incorrect based on which court of appeals is called upon to review the case, a critically important fact not known to the trial judge or the litigants until after the decisions are made. If the trial judge guesses wrong and the court of appeals to which the case is assigned determines that the error was harmful, then the trial court will be reversed, and the case may be remanded for retrial. When the two courts with coterminous jurisdiction are on opposite sides of an issue, parties, counsel, and trial judges are forced to play appellate roulette.

This uncertainty for the trial courts, counsel, and litigants is especially problematic when the issue is an important and frequently recurring one like the issue we encounter today.[7] One former justice of the Supreme Court of Texas and a former member of both Houston-based courts of appeals has described this predicament as "practicing law on a

[7] *See Miles*, 914 S.W.2d at 139.

3

guess and a gamble."[8] Public perception of fairness is diminished when the certainty and predictability of court decisions is compromised. But the public's confidence in our courts is strengthened by the assurance that the courts in a single jurisdiction view the law uniformly and apply it consistently.

For these reasons it is in the best interest of all concerned that, whenever possible, the two Houston-based courts of appeals achieve alignment. But this desirable goal presents a number of practical challenges for both courts, not the least of which is the enormous and constant commitment of time and judicial resources necessary to manage the task. Compounding this difficulty is the lack of any mechanism at the court-of-appeals level designed to eliminate conflicts between these two appellate courts and to bring uniformity to the jurisprudence of two districts that share the same geographical jurisdiction.

Panels of this court are bound to follow this court's precedent, and if a panel occasionally overlooks this court's precedent, the members of the court may resolve any resulting conflict by means of en banc review.[9] In a case involving a very close legal issue in which one of the Houston-based courts of appeals already has taken a position, justices on the other Houston-based court of appeals may adopt the rule from the sister court in the interest of fostering uniformity and predictability in their shared jurisdiction. But, practically speaking, most legal issues are not that close and, in most cases, appellate judges are likely to adopt the rule that in their judgment is correct, even if in doing so they create a conflict between the two Houston-based courts of appeals.

En banc review is well-suited to resolve conflicts in one court of appeals's precedent. But, with few exceptions, en banc review will resolve a conflict between the two Houston-based courts of appeals only if a majority of the en banc court happens to

---

[8] Scott Brister, *Is It Time to Reform Our Courts of Appeals?* HOUS. LAW., Mar.-Apr. 2003, at 22, 26.

[9] *See* TEX. R. APP. P. 41.2(c); *Glassman v. Goodfriend*, 347 S.W.3d 772, 781–82 & n.8 (Tex. App.—Houston [14th Dist.] 2011, pet. denied) (en banc).

make the same judgment as the other appellate court regarding the legal issue at hand.[10] If there is no conflict in the precedent of this court and if a majority of the members of this court sitting en banc conclude that a precedent of this court is correct, then a conflict between that precedent and precedent from the First Court cannot be resolved by en banc review in this court. If a majority of the members of this court sitting en banc conclude that a precedent that conflicts with our sister court is wrongly decided and should be overruled, then the basis for en banc review is the conclusion that the precedent was wrongly decided, rather than the conflict between sister courts. The sitting justices from the First Court cannot sit en banc on the Fourteenth Court and vice versa.[11] For these reasons, en banc review is not well-suited to resolve conflicts between these appellate courts.

Years ago, the Supreme Court of Texas took notice of the manifest problems created by overlaps in Texas appellate districts. *See Miles*, 914 S.W.2d at 139. This "disfavored" system has been harshly criticized by members of the legal community who have experienced firsthand the unwanted consequences of our state's unusual and increasingly problematic intermediate appellate court structure. Many have called for the combination of the two Houston-based courts into a single district, to eliminate the growing jurisprudential problems as well as the extraordinary time and expense that are devoted to dealing with the conflicts and confusion inherent in the current scheme.[12] Were the two courts to be combined into a single district, conflicts between cases like *Moers* and *Hardin* could be resolved through the en banc process. That is not an option under the existing structure.

/s/   Kem Thompson Frost
Justice

---

[10] *See Glassman*, 2011 WL 2150225, at *6–9 (en banc opinion of this court agreeing with prior en banc opinion from the First Court of Appeals).

[11] *See* TEX. R. APP. P. 41.2(a).

[12] *See* Brister, 40 HOUS. LAW. at 25–27.

5

The en banc court consists of Chief Justice Hedges and Justices Frost, Seymore, Brown, Boyce, Christopher, Jamison, and McCally.  Justice Anderson is not participating.

Justices Seymore, Brown, Boyce, and Jamison join the En Banc Majority Opinion authored by Justice Frost.  Justice Frost issues a separate En Banc Concurring Opinion in which Justices Seymore and Brown join.  Justice Jamison issues an En Banc Concurring Opinion.  Justice Christopher issues an En Banc Dissenting Opinion in which Chief Justice Hedges and Justice McCally join.