**Opinion Filed July 5, 2019**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

_____

### No. 05-18-00356-CV
_____

**BROOKS-PHS HEIRS, LLC; BROOKS-PSC HEIRS, LLC; BROOKS-WTC HEIRS, LLC; ALASTAIR TRICKETT; PENELOPE TRICKETT; HEATHER ELIZABETH OLSEN; MARILYN HOLMES TULLOCH; NANCY LEE HALSTED WOODMANSEE; JUNE C. HAACK; MARILYN HALSTED; JOSEPH EDWIN HALSTED; THOMAS ARTHUR HALSTED; ROBERT BRUCE HALSTED; MARGARET H. REYNOLDS; MARY P. HALSTED; JANE DECOSKY; CAROL CANFIELD CLARKE-TERRILL, FORMERLY CAROL C. SWEARINGEN, AS TRUSTEE OF THE ROBERT G. SWEARINGEN REVOCABLE TRUST DECEMBER 19, 2001; MARCELLE BRANNEN; AND ROBERT G. MCLEOD, ALSO KNOWN AS BOB MCLEOD, Appellants**

**V.**

**RICHARD HOWARD BOWERMAN, INDIVIDUALLY AND AS INDEPENDENT EXECUTOR OF THE ESTATE OF ROBERT BOWERMAN, DECEASED; STEVEN ROBERT BOWERMAN, INDIVIDUALLY; AND ESTHER MICHELE DAUGHERTY, INDIVIDUALLY, Appellees**

**On Appeal from the 225th District Court**
**Bexar County, Texas**
**Trial Court Cause No. 2013-CI-10924**

## OPINION CONCURRING IN THE DENIAL OF APPELLEES′ FURTHER MOTION FOR REHEARING AND MOTION FOR *EN BANC* RECONSIDERATION

Opinion by Justice Schenck

By good fortune, nothing in appellees' motion for rehearing and motion for *en banc* reconsideration warrants its granting. Accordingly, the Court denies both motions. I pause to express a continuing concern occasioned by our posture in this case.

The Texas Supreme Court transferred this case from the San Antonio Court of Appeals to this Court pursuant to section 73.001 of the government code, a procedure necessitated by continued, but uneven growth of the state and the unique proliferation of intermediate courts of appeals over the last century. TEX. GOV'T CODE ANN. § 73.001. No other state has spread its appellate judiciary as widely or as thinly as Texas.[1] As a result, the Legislature and the Texas Supreme Court have been forced into a continuing application of duct tape and sealing wax solutions like docket transfers under Chapter 73. Beyond the attendant costs and frustrations visited upon the parties, the resort to transfers as a solution engenders other, more structural problems. I pause here to note one such challenge produced by the request for en banc reconsideration that could be serious in another case.

When one intermediate court of appeals sits in the place of another, it applies the precedent of the transferor court. TEX. R. APP. P. 41.3. Of course, we (or more directly I as the author) have endeavored to do that here, applying San Antonio precedent to arrive at the result we think that appellate court would reach. The question of whether that application is correct at this point is essentially out of reach of the en banc review mechanism as it is described in rule 41.2, as the panel has already applied what it sees as San Antonio law; our remaining colleagues that constitute the en banc court in Dallas could likewise only predict how San Antonio would rule; and the San Antonio Court of Appeals has no seat at the table. *See id.* 41.2 (decision by en banc court).

Of course, the en banc mechanism does not exist primarily to process claims of routine error correction. Instead, its principal function is to resolve inconsistencies in (or lingering debates over) the governing intermediate appellate decisional authority—but that's something that is practically impossible in this posture as well. Had this case touched upon any issue of developing

---

[1] Our 80 justices serve on 14 courts. California has a much larger population and 105 intermediate appellate judges serving on 6 courts. New York has four intermediate appellate courts.

importance within the jurisprudence of the San Antonio Court of Appeals, the opportunity to explore, develop, or resolve that question is simply lost. We, of course, could function only as an impotent echo chamber, as we are constrained from any development of that authority at all. We are functioning, in essence, as private arbitrators, nothing but poor players issuing opinions full of sound and fury, signifying nothing to anyone but the parties immediately before us. Indeed, our holding here—be it by the panel or sitting en banc—will not be binding in San Antonio or even here, except, perhaps, in the unlikely event a future panel of this Court faces the same issue in another case transferred from the same court. *See, e.g.*, *In re Reardon*, 514 S.W.3d 919, 922 (Tex. App.—Fort Worth 2017, no pet.) ("[N]either . . . [R]ule 41.3 itself nor the comment that follows addresses whether a *transferee* court may establish precedent to bind the *transferor* court.").

If I, or one of my colleagues, disagreed with the result in any transferred matter or, worse, identified a pre-existing conflict within the governing decisional authority, we could not possibly do anything constructive, much less correct it. At most, we could essentially light a signal fire to the transferor court (of no benefit to the party suffering from the potentially erroneous application of the governing rule) or to the Texas Supreme Court, which, one expects, has better things to do than to resolve conflicts in authority internal to the transferor court.

Of course, the problems with our existing structure are hardly new and are far broader than the sidelining of the en banc reconsideration device. *See, e.g.*, *Miles v. Ford,* 914 S.W.2d 135, 137 (Tex. 1995) (discussing intriguing problems created by overlapping geographic jurisdiction and transfer among overlapping districts).

One would hope that at some point the Legislature would rouse itself to a more meaningful and complete solution.


/David J. Schenck/
DAVID J. SCHENCK
JUSTICE


Bridges, Osborne, and Carlyle, J.J. join this concurring opinion

180356HC.P05