

NUMBER 13-09-168-CR

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

**ROLAND R. FERNANDEZ,**                                                       **Appellant,**

**v.**

**THE STATE OF TEXAS,**                                                       **Appellee.**

### On appeal from the 187th District Court
### of Bexar County, Texas.

# MEMORANDUM OPINION

**Before Justices Rodriguez, Benavides, and Vela
Memorandum Opinion by Justice Vela**

A jury convicted appellant, Roland R. Fernandez, of twelve counts of aggravated

sexual assault of a child, *see* TEX. PENAL CODE ANN. § 22.021 (Vernon Supp. 2009), and

two counts of indecency with a child by exposure. *See id*. § 21.11(a)(2)(A). The jury

assessed punishment at twenty-five years' imprisonment for each count of aggravated

sexual assault of a child and five years' imprisonment for each count of indecency with a child. All of the sentences are to run concurrently. In five issues, appellant challenges the factual sufficiency of the evidence to support his convictions and complains that this Court lacks jurisdiction to hear this appeal. We affirm.[1]

## I. FACTUAL BACKGROUND

### A. State's Evidence

When S.A.[2] was four or five years old, her parents divorced, and she began living in San Antonio with her mother, G.A. Because G.A. worked, S.A. spent every other weekend at the home of G.A.'s sister-in-law, Salina Fernandez, and Salina's husband, appellant. S.A. testified appellant sexually abused her numerous times during the weekends she spent with Salina and appellant. She did not remember the dates that the abuse occurred; however, she testified the abuse happened when she was between five and six years old in 1999 and 2000. When S.A. was twelve years old, she told her mother some of the details about what appellant had done to her.

In May 2006, G.A. called the San Antonio Police Department to report a "sexual assault" of S.A. Afterwards, Officer Gina Flores went to G.A.'s house and interviewed S.A. Officer Flores testified that S.A. told her that the first incident of sexual abuse occurred:

> when the aunt [Salina Fernandez] left, she [S.A.] was called to the bed. She went to the bed and the suspect [appellant] took her shorts off. And I asked, "What happened after that?" And she said . . . "That he started to touch me and he put his finger down there.'" And I asked her, "Where down there?" And she said, "In my vagina."

---

[1]This appeal was transferred to this Court from the Fourth Court of Appeals by order of the Texas Supreme Court. *See* TEX. GOV'T CODE ANN. § 22.220 (Vernon 2004) (delineating the jurisdiction of appellate courts); TEX. GOV'T CODE ANN. § 73.001 (Vernon 2005) (granting the supreme court the authority to transfer cases from one court of appeals to another at any time that there is "good cause" for the transfer).

[2]Because the complainant, S.A., is a minor, we will refer to her by her initials. We will also refer to her mother by her initials to protect her privacy.

Officer Flores testified that S.A. told her about another incident when appellant "laid her on the bed and he showed her his penis. . . . [H]e took her shorts off and that's when he held her down on her shoulders, and . . . he stuck his penis . . . in her vagina." S.A. told Officer Flores that the sexual abuse stopped when Salina divorced appellant.

After Detective Jeffrey Lowder obtained statements from S.A. and G.A., he referred both of them to the Children's Advocacy Center for ChildSafe ("ChildSafe"). At some point, appellant spoke to Detective Lowder about the allegations. With respect to this conversation, Detective Lowder testified that:

> after I had read the allegations set forth by the victim, I allowed Mr. Fernandez [appellant] to tell me if he could explain to me the allegations themselves. And he basically told me he had no explanation why she was coming forward and making such allegations in regards to the sexual nature of the case.

During this conversation, appellant never said anything derogatory about S.A., and he never tried to tell Detective Lowder why he thought S.A. would make these allegations.

Salina Fernandez testified that appellant permanently moved out of the house in December 2000 and that she and appellant divorced in 2001. She testified that for the period of time that S.A. was spending the weekends with them, appellant would stay home when she left the house for an errand. On cross-examination, she testified that appellant did not want to "stay home in charge of the kids."

Dr. Nancy Kellogg, a professor of pediatrics who served as ChildSafe's medical director, reviewed S.A.'s sexual assault exam,[3] which was performed on June 7, 2006 by Shirley Menard.[4] When the prosecutor asked Dr. Kellogg to read what S.A. "told the

---

[3]The trial court admitted S.A.'s sexual-examination report into evidence as State's exhibit 3.

[4]Dr. Nancy Kellogg testified that Shirley Menard, a nurse practitioner, worked at ChildSafe for about eight years and retired in 2007 "with medical issues." Menard did not testify in this case.

examiner under the history portion" of the exam, she stated:

> Because they're going to check my privates, my uncle molested me. He stuck his finger in my privates. He didn't do it once. He did it a lot, like when my aunt would leave. Wear shorts and he would take them off and my underwear. He would unzip his pants and show himself. He would hold me down. Sometimes he would lick me on the front private. He would stick his penis in me, but not all the way in.

When the prosecutor asked Dr. Kellogg if S.A. "indicate[d] where he [appellant] would stick his penis in her?", she said, "Her front and back privates." Dr. Kellogg stated that the physical findings of S.A.'s sexual-assault exam were "normal." However, she testified that "in cases where we have history of penetration, we have somewhere in the neighborhood of 85 to 90 percent of those exams are normal." On cross-examination, when defense counsel asked Dr. Kellogg, "[Y]our findings are consistent with the allegations. In other words, they could have happened?", she said, "The allegations could have happened. Yes, that's the medical opinion."

**B. Defense Evidence**

Detective Lowder testified for the defense that S.A. told him "that the first time that anything happened inappropriately, she was on her aunt's [Salina's] bed while her aunt was taking a shower[.]" In that incident, appellant picked her up, placed her down, held her down on the bed, took off her shorts and underwear, placed one of his fingers in her vagina, and licked her vagina. Detective Lowder stated that the "second thing" S.A. mentioned to him was an instance when she was in her cousins' room, and appellant was sitting in a chair. At that time, appellant exposed himself and told S.A. to kiss his penis. When Detective Lowder asked S.A. whether anything happened in her cousins' presence, she responded with two separate incidents. First, while she and her cousins wrestled with appellant, appellant placed one of his fingers inside of her vagina. Second, "while they

4

would sit next to each other on the couch in the living room, he [appellant] would place his hand inside her shorts and digitally penetrate her [S.A.]." She did tell him that appellant "penetrated her bottom[.]" On cross-examination, he stated that S.A. never "deviate[d] from the fact that she told [him] that [appellant] abused her with his penis and with his finger and with his mouth[.]"

Appellant's son, R.F.,[5] testified that he did not recall "wrestling around," "playing around," or engaging in "horseplay" with S.A. or appellant. He recalled seeing nothing suspicious between S.A. and appellant.

Appellant's niece, M.F.,[6] testified that in 1997 when she was a young child, appellant and Salina lived with her for a short time. M.F. stated that appellant never touched her or did anything inappropriate during that time frame. She visited Salina and appellant at their home in 1999 and 2000 and never saw any inappropriate behavior.

M.F.'s sister, P.F.,[7] testified that she was four years old in 1997. She remembered appellant, his wife, and their children staying at the home in which she lived. She did not remember appellant touching her sexually during that time.

Appellant testified that all of the allegations that S.A. made against him were false. He testified that he never touched S.A. "in an inappropriate way" and that he never exposed himself to her.

On cross-examination, appellant testified that about March 2000, he left the house where he lived with Salina. When the prosecutor asked him, "Were you ever left alone with the children, including [S.A.]?", he said, "Yes, ma'am." When asked if he would have been

---

[5]At the time of trial, R.F. was a minor.

[6]At the time of trial, M.F. was a minor.

[7]At the time of trial, P.F. was a minor.

the only adult with the children, he said, "Sometimes Tony was there and sometimes Patricia, Salina's sister was there." He testified that his relationship with S.A. was "relatively close."

## II. DISCUSSION

## A. Sufficiency of the Evidence

In issue one, appellant challenges the factual sufficiency of the evidence to support his convictions.

### 1. Standard of Review

In a factual-sufficiency review, the only question to be answered is: "Considering all of the evidence in a neutral light, was a jury rationally justified in finding guilt beyond a reasonable doubt?" *Grotti v. State*, 273 S.W.3d 273, 283 (Tex. Crim. App. 2008). Evidence can be deemed factually insufficient in two ways: (1) "the evidence supporting the conviction is 'too weak' to support the fact finder's verdict;" or (2) "considering conflicting evidence, the fact finder's verdict is 'against the great weight and preponderance of the evidence.'" *Laster v. State*, 275 S.W.3d 512, 518 (Tex. Crim. App. 2009) (quoting *Watson v. State*, 204 S.W.3d 404, 414-15 (Tex. Crim. App. 2006)). When a court of appeals conducts a factual-sufficiency review, it must defer to the jury's findings. *Id*. The court of criminal appeals has "set out three 'basic ground rules' implementing this standard." *Id*. (quoting *Watson*, 204 S.W.3d at 414). First, the appellate court must consider all of the evidence in a neutral light, as opposed to in a light most favorable to the verdict. *Id*. Second, the appellate court "may only find the evidence factually insufficient when necessary to 'prevent manifest injustice.'" *Id*. (quoting *Cain v. State*, 958 S.W.2d 404, 407 (Tex. Crim. App. 1997)). Third, the appellate court must explain why the

6

evidence is too weak to support the verdict or why the conflicting evidence greatly weighs against the verdict. *Id*. Although the verdict is afforded less deference during a factual-sufficiency review, an appellate court is not free to "override the verdict simply because it disagrees with it." *Id*.

Our review of a factual sufficiency challenge should be examined under the principles of review for a hypothetically correct jury charge. *Grotti*, 273 S.W.3d at 280-81. "'Such a charge [is] one that accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof, or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried.'" *Villarreal v. State*, 286 S.W.3d 321, 327 (Tex. Crim. App. 2009) (quoting *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997)).

**2. Applicable Law-Aggravated Sexual Assault of a Child**

In counts one through six and eight through thirteen, the jury convicted appellant of twelve counts of aggravated sexual assault of a child. Section 22.021(a) of the penal code provides, in relevant part, that a person commits the offense of aggravated sexual assault of a child if the person:

(B) intentionally or knowingly:

  (i)     causes the penetration of the anus or sexual organ of a child by any means;

  (ii)    causes the penetration of the mouth of a child by the sexual organ of the actor;

  (iii)   causes the sexual organ of a child to contact or penetrate the mouth, anus, or sexual organ of another person, including the actor;

  (iv)    causes the anus of a child to contact the mouth, anus, or sexual organ of another person, including the actor; or

7

> (v) causes the mouth of a child to contact the anus or sexual organ of another person, including the actor; and
>
> (2) if:
>
> * * *
>
> (B) the victim is younger than 14 years of age. . . .

TEX. PENAL CODE ANN. § 22.021(a)(1)(B)(i)-(v), (2)(B). The testimony of a child victim alone is sufficient to support a conviction for aggravated sexual assault of a child. *Perez v. State,* 113 S.W.3d 819, 838 (Tex. App.–Austin 2003, pet. ref'd); *see* TEX. CODE CRIM PROC. ANN. art. 38.07 (Vernon 2005); *Tear v. State,* 74 S.W.3d 555, 560 (Tex. App.–Dallas 2002, pet. ref'd).

### a. Counts Three, Four, Ten, & Eleven

To prove counts three and ten as set forth in the charge, the State was required to establish beyond a reasonable doubt that appellant "did intentionally or knowingly cause the penetration of the female sexual organ of [S.A.], a child who was younger than 14 years, by [appellant's] male sexual organ, . . . ." To prove counts four and eleven as set forth in the charge, the State was required to establish beyond a reasonable doubt that appellant "did intentionally or knowingly cause the female sexual organ of [S.A.], a child who was younger than 14 years, to contact the male sexual organ of [appellant], . . . ."

S.A. testified that on one occasion, appellant took off her shorts and underwear and that she saw his erect penis. She stated that appellant "placed it in my vagina, but he didn't place it all the way in where it could hurt." When the prosecutor asked S.A. how many times she recalled appellant placing his penis in her vagina, she said, "More than five times." Based upon S.A.'s testimony, a rational jury could reasonably conclude that while S.A. was younger than fourteen years of age, appellant (1) caused the penetration of

8

S.A.'s female sexual organ by his male sexual organ on at least two occasions and (2) caused S.A.'s female sexual organ to contact his male sexual organ on at least two occasions.

**b. Counts One, Two, Eight, & Nine**

To prove counts one and eight as set forth in the charge, the State was required to establish beyond a reasonable doubt that appellant "did intentionally or knowingly cause the penetration of the anus of [S.A.], a child who was younger than 14 years, by [appellant's] male sexual organ, . . . ." To prove counts two and nine as set forth in the charge, the State was required to establish beyond a reasonable doubt that appellant "did intentionally or knowingly cause the anus of [S.A.], a child who was younger than 14 years, to contact the male sexual organ of [appellant], . . . ."

When the prosecutor asked S.A. "[c]an you tell us if he [appellant] ever placed his penis anywhere else?", she said, "Yes. In my bottom." When asked if she was "familiar with the word anus," she said that she was. And, when the prosecutor asked her, "Is that the area you're talking about?", she said, "Yes." She testified that while she and appellant were in Salina's bedroom, "[m]y shorts were off and my underwear were off, and he had turned me over and he was putting his penis in my bottom, and then he stopped, like he's always stopped." When asked what she meant by "he always stopped," she said, "Like he would put it in, but he wouldn't put it all the way to where it would hurt. And I felt that it was wet and he was up." She said that the "wetness" came from his penis and that when she said that "'he was up,'" she meant "that his penis was erect."

Regarding the number of times this conduct occurred, we note that the prosecutor, before questioning S.A. about appellant putting his penis in her anus, had questioned S.A. about the number of times that appellant put his penis in her vagina. When the prosecutor

9

asked S.A. how many times appellant put his penis into her vagina, she said, "More than five times." After the prosecutor finished this line of questioning, he began questioning her about the incidents when appellant put his penis in her anus. When the prosecutor asked her how many times that happened, she said, "It was less than the other times" but "more than one time." By "other times" she was referring to the number of times appellant put his penis in her vagina, which was "[m]ore than five times." Based upon S.A.'s testimony, a rational jury could reasonably conclude that while S.A. was younger than fourteen years of age, appellant (1) caused his sexual organ to penetrate S.A.'s anus on at least two occasions and (2) caused S.A.'s anus to contact his male sexual organ on at least two occasions.

### c. Counts Five and Twelve

To prove counts five and twelve as set forth in the charge, the State was required to establish beyond a reasonable doubt that appellant "did intentionally or knowingly cause the penetration of the female sexual organ of [S.A.], a child who was younger than 14 years, by [appellant's] finger, . . . ." S.A. testified that while she and her cousins were laying on a bed with the covers over them, appellant came into the bedroom and "put his finger in my vagina." She moved away from him, and he left the room. On another occasion, she and appellant were in a bedroom while appellant slept on the bed. Her cousins were also in this bedroom, playing video games. She testified that while she sat on the bed, appellant "woke up and . . . like, put his hand in my shorts and he had put his finger in my vagina, and it hurt so I moved away and I got up." She recounted another incident when her cousins were outside the house and Salina was at HEB. She said that as she walked into Salina's bedroom, appellant pulled down her shorts and underwear and started "putting [his fingers] in my privates." By "privates" she meant her "vagina area."

10

She testified that she could feel his fingers inside of her vagina. When the prosecutor asked her, "How many times did he do that to you?", she said, "Well, that exactly, probably a couple of times." She also testified that "[i]t would sometimes happen in my cousins' room." When the prosecutor asked her to "[t]ell us about the time that it happened in your cousins' room[,]" she said that appellant was sitting in a rocking chair, watching TV. While she sat on his lap, facing him, "he put his fingers in [her] vagina area." She testified that she felt his fingers inside of her vagina. When the prosecutor asked her, "Besides these two times, did he ever put his finger in your vagina area as you described?", she said, "Yes." However, she could not remember how many times this happened. When the prosecutor asked her, "Could it be more than ten or less than ten?", she said, "More than five." Based upon S.A.'s testimony, a rational jury could reasonably conclude that while S.A. was younger than fourteen years of age, appellant on at least two occasions caused the penetration of S.A.'s female sexual organ by his finger.

### d. Counts Six and Thirteen

To prove counts six and thirteen as set forth in the charge, the State was required to establish beyond a reasonable doubt that appellant "did intentionally or knowingly cause the female sexual organ of [S.A.], a child who was younger than 14 years, to contact the mouth of [appellant], . . . ." When the prosecutor asked S.A. if appellant had ever touched her with any other part of his body, she said, "His mouth." She testified that appellant "would put it on my vagina." She stated that he did this "[m]ore than five times" while she was on Salina's bed. When the prosecutor asked if she "remember[ed] how . . . he put his mouth on your vagina?", she said he "would put his mouth and he would start licking me, . . . ." Based upon S.A.'s testimony, a rational jury could reasonably conclude that while S.A. was younger than fourteen years of age, appellant on at least two occasions caused

11

S.A.'s female sexual organ to contact his mouth.

### 3. Applicable Law-Indecency With a Child by Exposure

In counts seven and fourteen, the jury convicted appellant of two counts of indecency with a child by exposure. Section 21.11 of the penal code provides that a person commits the offense of indecency with a child by exposure "if, with a child younger than 17 years of age, . . . the person: . . . (2) with intent to arouse or gratify the sexual desire of any person: (A) exposes the person's anus or any part of the person's genitals, knowing the child is present: . . . ." TEX. PENAL CODE ANN. § 21.11(a)(2)(A); *see* *Breckenridge v. State*, 40 S.W.3d 118, 128 (Tex. App.–San Antonio 2000, pet. ref'd). A fact finder can infer the requisite, specific intent to arouse or gratify the sexual desire of any person "from the defendant's conduct, remarks, and all surrounding circumstances." *Id*. (citing *McKenzie v. State*, 617 S.W.2d 211, 216 (Tex. Crim. App. 1981)). The testimony of a child victim alone is sufficient to support a conviction for indecency with a child. *Perez,* 113 S.W.3d at 838; *see* TEX. CODE CRIM PROC. ANN. art. 38.07; *Tear,* 74 S.W.3d at 560.

To prove counts seven and fourteen as set forth in the charge, the State was required to establish beyond a reasonable doubt that appellant "did, with the intent to arouse or gratify the sexual desire of any person, expose part of his genitals, knowing that [S.A.] a female child younger than seventeen (17) years and not the spouse of [appellant] was present, . . . ."

S.A. testified that on one occasion while her cousins played video games in the living room, she was lying on the edge of Salina's bed. She stated that appellant took off her shorts and underwear and that she saw his erect penis. She stated that on another occasion, she and appellant were in the living room, playing. During this encounter, she said he "had his penis out" and asked her to kiss it. She refused and turned her head

away.  When the prosecutor asked her, "Do you remember at that time when he had his penis out, whether it was erect, whether it was up?", she said, "Yes, I remember . . . ." Based upon S.A.'s testimony, a rational trier of fact could find beyond a reasonable doubt that appellant on at least two occasions, while knowing that S.A., a child younger than seventeen years of age and not his spouse was present, exposed part of his genitals to her with intent to arouse or gratify sexual desire.

In challenging the factual sufficiency of the evidence, appellant contends:  (1) S.A. was the only witness to testify that the sexual abuse occurred; (2) both Salina Fernandez and her son, R.F., who were present when S.A. stayed the weekends at their house, never "saw or perceived anything unusual" occur between S.A. and appellant; (3) there was no physical evidence that any sexual assaults occurred; (4) S.A. told Detective Lowder that the first time that appellant sexually abused her was when Salina was in the shower; however, S.A. told Officer Flores that it happened when Salina left the house to run errands; (5) appellant never threatened S.A. or told her anything "during most of the episodes despite the fact that his sons were present and on occasion his wife," Salina; (6) S.A.'s father would sometimes stay with S.A. at the home of Salina and appellant; (7) Salina testified that when S.A. stayed at her home, she "appeared" happy, well-adjusted, and never tried to hide from appellant; (8) Salina testified that appellant did not like staying at home with the kids "and would sometimes" do the errands and go to H.E.B.; (9) Salina's son, R.F., never saw anything suspicious or inappropriate between S.A. and appellant; (10) S.A.'s sexual-assault exam was normal; (11) appellant denied that he had ever exposed his genitals to S.A.; and (12) appellant denied that he had ever touched S.A. in a sexual manner or in any inappropriate manner.  Initially, we note that the jury is the sole judge of the credibility of the witnesses and the weight to be given the evidence, and may choose

13

to believe all, some, or none of it.  TEX. CODE CRIM. PROC. ANN. art. 38.04 (Vernon 1979); *Margraves v. State*, 34 S.W.3d 912, 919 (Tex. Crim. App. 2000); *Rachal v. State*, 917 S.W.2d 799, 805 (Tex. Crim. App. 1996).  Thus, the jury is permitted to believe or disbelieve any part of the testimony of any witness.  *Jones v. State*, 984 S.W.2d 254, 258 (Tex. Crim. App. 1998); *Perez*, 113 S.W.3d at 838.  "Reconciliation of evidentiary conflicts is solely a function of the trier of fact".  *Perez*, 113 S.W.3d at 838 (citing *Losada v. State*, 721 S.W.2d 305, 309 (Tex. Crim. App. 1986)).  The jury could have accepted that portion of S.A.'s testimony as sufficient to support the convictions and disregarded the inconsistencies.  "A decision is not manifestly unjust because the jury resolved the manifestly conflicting views of the evidence in favor of the State."  *Cain*, 958 S.W.2d at 409.

Viewing all of the evidence neutrally, we conclude that the evidence supporting the convictions is not so weak that the jury's determinations are clearly wrong and manifestly unjust, or that the verdict is against the great weight and preponderance of the evidence. We, therefore, hold that the evidence is factually sufficient to support the convictions for indecency with a child by exposure and for aggravated sexual assault of a child.  Issue one is overruled.

**B. Jurisdiction**

In issues two through five, appellant challenges this Court's jurisdiction over his appeal.  He contends that chapter 73 of the Texas Government Code violates the Equal Protection Clause of the United States Constitution, because it does not give proper effect to the voters of Texas who elect the justices of the intermediate appellate courts.  *See* U.S. CONST. amend. XIV.; TEX. GOV'T CODE ANN. § 73.001 (Vernon 2005).  He also argues that this Court lacks jurisdiction over his appeal because the Texas Supreme Court's order of

transfer is unconstitutional under the Texas Constitution due to a conflict between the Texas Constitution and chapter 73 of the Texas Government Code. He further argues that this Court lacks jurisdiction over his appeal because the order of transfer violates the Equal Protection and Due Course of Law provisions of the Texas Constitution and is a void exercise of legislative authority over the judiciary in violation of the Separation of Powers provision contained in article II, section 1 of the Texas Constitution. *See* TEX. CONST. art. II § 1. He requests that we transfer this appeal back to the Fourth Court of Appeals.

The Texas Supreme Court may transfer cases to this Court, pursuant to section 73.001 of the Texas Government Code, "at any time that, in the opinion of the supreme court, there is good cause for transfer." TEX. GOV'T CODE ANN. § 73.001.[8] Section 73.002 of the government code provides that the transferee court of appeals "has jurisdiction of the case without regard to the district in which the case originally was tried and to which it is returnable on appeal." TEX. GOV'T CODE ANN. § 73.002. Appellant argues his constitutional issues as challenges to our jurisdiction. Generally, a party is not required to preserve a challenge to the court of appeals' jurisdiction. *See; e.g., Arocha v. State*, No. 08-07-00108-CR 2009 WL 1883733, at *5 (Tex. App.–El Paso June 30, 2009) (mem op.) (not designated for publication); *pet. dism'd improvidently granted*, 2010 WL 2618421 (Tex. Crim. App. June 30, 2010). However, the Eighth Court of Appeals in *Arocha* concluded that constitutional jurisdictional challenges such as this must be preserved, because "[e]ven if section 73.001 is unconstitutional as applied to [Arocha], we would not be divested of jurisdiction" under section 73.002. *Id*.

---

[8]*See also Arocha v. State*, No. 08-07-00108-CR 2009 WL 1883733, at *4 (Tex. App.–El Paso June 30, 2009), (mem op.) (not designated for publication); *pet. dism'd improvidently granted*, 2010 WL 2618421 (Tex. Crim. App. June 30, 2010). In *Arocha*, the Court of Criminal Appeals granted discretionary review to determine whether the Eighth Court of Appeals erred in rejecting Arocha's jurisdictional arguments on the basis of a procedural default, however, upon reviewing the record, it concluded that granting Arocha's petition was improvident. *Arocha v. State*, (No. PD-1189-90) 2010 WL 2618421 (Tex. Crim. App. June 30, 2010).

The proper procedure for obtaining a transfer between appellate courts is by motion to the Texas Supreme Court. *See* TEX. GOV'T CODE ANN. § 73.001. The Texas Supreme Court has established the following procedure for a transfer:

> The party requesting transfer should file a copy of the motion to transfer in each of the two courts of appeals, asking that, when the motion is forwarded to the Supreme Court, each court of appeals advise the Supreme Court in writing whether it has any objection to the proposed transfer. Any briefs in favor of the proposed transfer should also be filed in each court of appeals and forwarded with the transfer motion. We will then have the motion, the briefs, and the comments of the two courts of appeals in determining whether to grant the motion to transfer.

*Id*. (citing *Miles v. Ford Motor Co.*, 914 S.W.2d 135, 137 n.2 (Tex. 1995)). Failure to follow the established procedure results in failure to preserve complaints about the transfer of an appeal. *See id*.

If appellant had followed the required procedure by filing a motion to transfer, his complaints about the constitutionality of section 73.001 would be remedied. *Id*. Alternatively, if his motion to transfer was denied, this Court would be in a position to address the constitutional issues. *Id*. We conclude appellant did not follow the proper procedure requesting transfer, and therefore, his complaint is not preserved. We overrule issues two through five.

### III. CONCLUSION

We affirm the trial court's judgment.

ROSE VELA
Justice

Do not publish.
TEX. R. APP. P. 47.2(b).

Delivered and filed the
19th day of August, 2010.

16