ACCEPTED
15-24-00070-CV
FIFTEENTH COURT OF APPEALS
AUSTIN, TEXAS
12/18/2024 2:54 PM
CHRISTOPHER A. PRINE
CLERK

**MISC. DOCKET NO. 24-9101**

**IN THE SUPREME COURT OF TEXAS**

FILED IN
15th COURT OF APPEALS
AUSTIN, TEXAS

12/18/2024 2:54:16 PM
CHRISTOPHER A. PRINE
Clerk

**SANDOM BAUMGARDNER**
*Appellant*

**v.**

**BRAZOS RIVER AUTHORITY**
*Appellee*

**MOVANT BRAZOS RIVER AUTHORITY
BRIEF RE: TRANSFER TO TENTH COURT OF APPEALS**

TO THE HONORABLE SUPREME COURT OF TEXAS:

COMES NOW, Movant and Appellee Brazos River Authority and files this, its Brief in support of its Motion to Transfer this case from the Fifteenth Court of Appeals to the Tenth Court of Appeals.

Respectfully submitted,

NAMAN, HOWELL, SMITH & LEE, PLLC
400 Austin Ave., Ste 800
P.O. Box 1470
Waco, TX 76703-1470
254/755-4100 (Telephone)
254/754-6331 (Facsimile)

BY:__/s/ Roy L. Barrett_____
    Roy L. Barrett
    State Bar No. 01814000

1                    Appellee's/Movant's Brief

barrett@namanhowell.com
Stephanie E. Schwab
State Bar No. 24088370
sschwab@namanhowell.com

COUNSEL FOR MOVANT/APPELLEE

## IDENTITY OF PARTIES AND COUNSEL

The undersigned counsel of record certifies the following listed persons have an interest in the outcome of this case. These representations are made so the Justices of the Court may evaluate possible disqualification or recusal.

| Movant/ Appellee/Defendant | Counsel |
|---|---|
| Brazos River Authority | Roy L. Barrett<br>State Bar No. 01814000<br>Stephanie Schwab<br>State Bar No. 24088370<br>NAMAN HOWELL SMITH & LEE, PLLC<br>400 Austin Avenue, 8th Floor<br>Waco, Texas 76701<br>Telephone: 254-755-4100<br>Facsimile: 254-754-6331<br>E-mail: barrett@namanhowell.com<br>E-mail: sschwab@NamanHowell.com |

| Respondent/ Appellant/Plaintiff: | |
|---|---|
| Sandom Baumgardner | Larry L. Fowler, Jr.<br>State Bar No. 07321900<br>Arin K. Schall<br>State Bar No. 24037440<br>HARRIS COOK, LLP<br>1309-A West Abram<br>Arlington, Texas 76013<br>Telephone: 817-275-8765<br>Facsimile: 817-460-8060<br>E-mail: larry@harriscooklaw.com<br>E-mail: Arin@HarrisCookLaw.com |

# TABLE OF CONTENTS

IDENTITY OF PARTIES AND COUNSEL.........................................................3

TABLE OF CONTENTS .............................................................................4

INDEX OF AUTHORITIES .........................................................................5

STATEMENT OF JURISDICTION...............................................................12

ISSUES PRESENTED.................................................................................13

STATEMENT OF FACTS............................................................................14

SUMMARY OF THE ARGUMENT ...........................................................17

ARGUMENT AND AUTHORITIES............................................................18

      A.      Under the Plain Language of § 22.220(d) and Other
            Similar Statutes, the Brazos River Authority is Not a
            "board, commission, department, office, or other
            agency in the executive branch of the state
            government."...................................................................19

      B.      The Brazos River Authority Does Not Have State-
            Wide Jurisdiction. ........................................................26

      C.      The Brazos River Authority is Not Like a University
            or Institution of Higher Education. ..............................29

      D.      The Legislature Did Not Create Jurisdiction for the
            Fifteenth Court of Appeals by Exclusion. ....................34

PRAYER FOR RELIEF.............................................................................37

# INDEX OF AUTHORITIES

**Cases**

*Arbor E&T, LLC v. Lower Rio Grande Valley Workforce Dev. Bd., Inc.,* 476 S.W.3d 25 (Tex. App.—Corpus Christi 2013, no pet.)........... 24, 26

*Bonin v. Sabine River Auth.,* 65 F.4th 249 (5th Cir. 2023).....................................28

*De Santiago v. W. Tex. Cmty. Supervision & Corr. Dep't,* 203 S.W.3d 387 (Tex. App.—El Paso 2006, no pet.) ....................................................25

*Fitzgerald v. Advanced Spine Fixation Sys., Inc.,* 996 S.W.2d 864 (Tex. 1999) .............................................................................................18

*Guar. Petroleum Corp. v. Armstrong,* 609 S.W.2d 529 (Tex. 1980) .......................20

*Helena Chem. Co. v. Wilkins,* 47 S.W.3d 486 (Tex. 2001) .....................................18

*Hodge v. Lower Colo. River Auth.,* 163 S.W.2d 855 (Tex. Civ. App.— Austin 1942, writ dism'd by agr.)................................................................20

*Ken Petroleum Corp. v. Questor Drilling Corp.,* 24 S.W.3d 344 (Tex. 2000) .............................................................................................19

*Lower Colo. River Auth. v. Riley,* No. 10-10-00092-CV, 2011 Tex. App. LEXIS 10236 (Tex. App.—Waco Dec. 28, 2011, no pet.) .................20

*Miles v. Ford Motor Co.,* 914 S.W.2d 135 (Tex. 1995) ...........................................11

*Monsanto Co. v. Cornerstones M.U.D.,* 865 S.W.2d 937 (Tex. 1993) ...................25

*San Antonio River Auth. v. Austin Bridge & Rd., L.P.,* 601 S.W.3d 616 (Tex. 2020) .............................................................................................20

*Sw. Royalties, Inc. v. Hegar,* 500 S.W.3d 400 (Tex. 2016)....................................18

*Tex. DOT v. City of Sunset Valley,* 146 S.W.3d 637 (Tex. 2004) ...........................25

*Willacy Cty. Water Control & Improv. Dist. v. Abendroth,* 177 S.W.2d 936 (Tex. 1944) .............................................................................................19

**Statutes**

TEX. BUS. ORGS. CODE § 22.356(a)(1).............................................................. 22, 29

TEX. CIV. PRAC. & REM. CODE § 101.001...................................................... 23, 26

TEX. CIV. PRAC. & REM. CODE § 105.001(3).........................................................26

TEX. CIV. PRAC. & REM. CODE § 16.061................................................................23

TEX. EDUC. CODE § 65.02 .....................................................................................32

TEX. EST. CODE § 22.014(5)........................................................ 22, 30, 31

TEX. GOV'T CODE § 2007.002(1)(A) ............................................... 22, 29

TEX. GOV'T CODE § 2007.002(1)(B) ................................................ 22, 31

TEX. GOV'T CODE § 2113.001(2) ..................................................... 22, 30

TEX. GOV'T CODE § 22.201(k) ...............................................................17

TEX. GOV'T CODE § 22.220(a) ...................................................... 17, 34

TEX. GOV'T CODE § 22.220(d)(1) .................................... 12, 16, 17, 36

TEX. GOV'T CODE § 22.220(d)(1)(C) ....................................................33

TEX. GOV'T CODE § 22.220(d)(1)(N) ...................................................33

TEX. GOV'T CODE § 2254.002 ..............................................................23

TEX. GOV'T CODE § 2269.002 ..............................................................23

TEX. GOV'T CODE § 2401.001 ...................................................... 22, 30, 31

TEX. GOV'T CODE § 311.023 ................................................................18

TEX. GOV'T CODE § 325.025 ................................................................22

TEX. GOV'T CODE § 403.0271(f)(1) ................................................. 22, 30

TEX. GOV'T CODE § 403.039(d) ...................................................... 22, 30

TEX. GOV'T CODE § 411.0251(3) ..................................................... 22, 30

TEX. GOV'T CODE § 411.1405(a)(2) ................................................ 22, 30

TEX. GOV'T CODE § 468.001 .......................................................... 22, 30

TEX. GOV'T CODE § 552.003 ................................................................23

TEX. GOV'T CODE § 554.001 .......................................................... 22, 30, 31

TEX. GOV'T CODE § 657.001 .......................................................... 22, 30

TEX. GOV'T CODE § 73.001 ................................................................11

TEX. GOV'T CODE § 447.010(k) ...........................................................30

TEX. HEALTH & SAFETY CODE § 361.421(10) .....................................30

TEX. LAB. CODE § 21.002(12)......................................................... 22, 31

TEX. LAB. CODE § 21.002(14) ........................................................ 22, 30

TEX. NAT. RES. CODE § 119.007 .................................................... 22, 30

TEX. SPEC. DISTS. CODE § 8502.001 ...................................................19

TEX. SPEC. DISTS. CODE § 8502.003 ...................................................27

TEX. SPEC. DISTS. CODE § 8502.020 ..............................................................13

**Other Authorities**

Senate Comm. Report, Bill Analysis, Tex. S.B. 1045, 88th Leg., R.S.
(2023)...............................................................................................28

Senate Interim Comm. on Natural Resources Report, 77th Leg. (2000),
*Missions and Roles of Texas River Authorities* ............................27

Tex. Att'y Gen. Op. H-10 (1973) ....................................................................21

Tex. Att'y Gen. Op. JM-1005 (1989) ..............................................................21

Tex. Att'y Gen. Op. JM-197 (1984) ................................................................26

Tex. Att'y Gen. Op. M-522 (1969)...................................................................21

Tex. Att'y Gen. Op. V-569 (1948) ............................................................ 20, 26

Tex. Att'y Gen. Op. WW-202 (1957)........................................................ 21, 26

**Constitutional Provisions**

Art. XVI, § 59, Texas Constitution...................................................................19

## STATEMENT OF THE CASE

*Nature of the Case*:

This is an appeal of a jury verdict returned and final judgment rendered against Appellant Sandom Baumgardner ("Baumgardner") and wholly in favor of Appellee Brazos River Authority ("BRA") on all issues. Appellant Baumgardner originally sued the BRA on November 27, 2017 challenging BRA's demands that he remove a concrete boat ramp and retaining wall placed by Baumgardner in Possum Kingdom Lake without the consent of the BRA and after having been expressly denied permission by the BRA. (C.R. 6-9) Possum Kingdom Lake is owned by the BRA and thus these improvements were placed on BRA's property. The BRA counterclaimed for breach of restrictive covenants, trespass, and for permanent injunction to remove the improvements placed on its property by Baumgardner without the consent of the BRA. (C.R. 22-36) The case was removed to federal court twice, and remanded twice, and the pleadings were amended by both parties multiple times. In 2020, while the lawsuit was pending, the BRA discovered that Baumgardner had placed additional improvements in Possum Kingdom Lake without the consent of the BRA, this time a floating boat dock. BRA's pleadings were promptly amended to include the floating boat dock in its counterclaims for trespass and breach of restrictive covenants and for removal of the floating boat dock as well. (C.R. 22-36)

The case was tried to a jury on January 8-10 of 2024. The issues presented to the jury were the BRA's claims for trespass and breach of restrictive covenant on the boat ramp and the floating dock (the retaining wall issue had been resolved by the parties at this point) and Baumgardner's claim/affirmative defense of arbitrary and capricious conduct by the BRA in denying Baumgardner permission to place the improvements in Possum King Lake. (C.R. 400-415) The jury returned a verdict wholly in the favor of Brazos River Authority, finding that Baumgardner breached the restrictive covenants applicable to his property and trespassed on the BRA's property by placing the concrete boat ramp

and floating boat dock in Possum Kingdom Lake without the consent of the BRA. (*Id.*) The jury further made an express finding that the BRA did NOT act in an arbitrary and capricious manner in denying Baumgardner consent to place the improvements on BRA-owned property. (*Id.*)

After the trial, Baumgardner filed a Motion for Judgment Notwithstanding the Verdict and to Disregard Jury Findings, arguing that the BRA presented no evidence in support of the jury's finding that Baumgardner breached the restrictive covenants and trespassed on BRA's property, and contending the BRA offered no evidence of why BRA refused consent for the boat ramp, which Baumgardner alleges is arbitrary and capricious. (C.R. 440-44) The trial court denied Baumgardner's Motion for JNOV and to disregard the jury findings and entered a Final Judgment on January 26, 2024. (C.R. 450-77) The Final Judgment included a permanent injunction directing Baumgardner to remove all portions of the boat ramp and the boat dock located on, over, or above Possum Kingdom Lake. (C.R. 456-457)

On February 5, 2024, Baumgardner filed two more Motions, asking to modify the trial court's final judgment, suspend enforcement of the judgment, and raising a plea to the jurisdiction, claiming the trial court lacked jurisdiction to issue injunctive relief. (C.R. 479-89) On February 9, 2024, after a hearing the trial court denied Baumgardner's plea to the jurisdiction, entered an Amended Final Judgment, which also included a permanent injunction directing Baumgardner to remove all portions of the boat ramp and the boat dock located on, over, or above Possum Kingdom Lake, and provided that Baumgardner could suspend enforcement of the injunction portion of the judgment by posting security in the amount of $53,000.00. (C.R. 495-518)

Baumgardner filed his Notice of Appeal on February 22, 2024 and the appeal was initially taken to the Tenth Court of Appeals in Waco.

| | |
|---|---|
| ***Parties:*** | *Plaintiff/Appellant/Respondent*: Sandom Baumgardner |
| | *Defendant/Appellee/Movant*: Brazos River Authority |
| ***Trial Court:*** | 170th District Court, McLennan County, Texas, Honorable Jim Meyer, Presiding, No. 10-24-00066-CV |
| ***Trial Court's Disposition:*** | After a jury trial, the jury returned a verdict entirely in favor of the Brazos River Authority. The trial court rendered a final judgment in favor of the Brazos River Authority on the jury's verdict and included a permanent injunction directing Baumgardner to remove all portions of the boat ramp and the boat dock located on, over, or above Possum Kingdom Lake. |
| ***Court of Appeals:*** | Tenth Court of Appeals at Waco, Texas, No. 10-24-00066-CV; Fifteenth Court of Appeals at Austin, Texas, No. 15-24-00070-CV |
| ***Court of Appeals' Disposition:*** | By letter dated July 29, 2024, the Tenth Court of Appeals notified the parties that it had identified this appeal as a case that is (or may be) within the "exclusive intermediate appellate jurisdiction" of the Fifteenth Court of Appeals and stated its intent to transfer this appeal to the Fifteenth Court of Appeals. This letter directed that any objection to this transfer is due on or before August 15, 2024. Appellee Brazos River Authority filed its objection to the transfer on August 12, 2024. The Appellant filed a reply to that objection on August 15, 2024 and Appellee filed a reply to Appellant's reply on August 19, 2024. The Tenth Court of Appeals did not issue any order or opinion on Appellee's objection to the transfer. However, by letter dated September 3, 2024, the Tenth Court of Appeals notified the parties that this case had been transferred to the Fifteenth Court of Appeals.
On September 20, 2024, the BRA filed a Motion to Transfer this case back to the Tenth Court of Appeals |

on the basis that the Fifteenth Court of Appeals lacks jurisdiction over this case. On September 30, 2024, Baumgardner filed his response to the BRA's Motion to Transfer. On October 7, 2024, the BRA filed its Merits Brief with the Fifteenth Court of Appeals, in which it renewed its objections to the transfer of the case to the Fifteenth Court of Appeals and incorporated by reference the BRA's prior objections and Motions, including its reply previously filed with the Tenth Court of Appeals.

On October 10, 2024, the Fifteenth Court of Appeals sent a letter to the Clerk of this Court, notifying this Court of the BRA's Motion to transfer this case back to the Tenth Court of Appeals. In that letter, the Fifteenth Court of Appeals recommends that the case be transferred back to the Tenth Court of Appeals but states that the Tenth Court of Appeals recommends that the case not be retransferred. On November 18, 2024, this Court issued its order requesting the parties file briefs with this Court addressing whether the Brazos River Authority is a "board, commission, department, office, or other agency in the executive branch of the state government" under Tex. Gov't Code § 22.220(d)(1).

No opinion or order has been issued by either the Tenth Court of Appeals or the Fifteenth Court of appeals on the merits of the lawsuit.

## STATEMENT OF JURISDICTION

This Court has jurisdiction over Brazos River Authority's Motion to Transfer this case to the Tenth Court of Appeals pursuant to TEXAS GOVERNMENT CODE § 73.001 and pursuant to the procedure set forth in *Miles v. Ford Motor Co.*, 914 S.W.2d 135, 137 n.2 (Tex. 1995).

## ISSUES PRESENTED

1. Whether the Brazos River Authority is a "board, commission, department, office, or other agency in the executive branch of the state government" under TEX. GOV'T CODE § 22.220(d)(1) so as to bring this case under the exclusive jurisdiction of the Fifteenth Court of Appeals.

## STATEMENT OF FACTS

This case is about a boat ramp and a floating boat dock placed by Appellant Baumgardner without the consent of the BRA in Possum Kingdom Lake, which is owned by the BRA.

The BRA is the owner of Possum Kingdom Lake (the "Lake") located in Young, Palo Pinto, Stephens, and Jack Counties, Texas. (R.R. Vol.4 p.155-56) The Lake consists of land impounded by Morris Shepard Dam up to the 1,000-foot mean sea level contour. (*Id.*) It is undisputed that all property at the Lake below the 1,000-foot contour line is owned by the BRA. (R.R. Vol.3 p.79-80; Vol.4 p.156, 140, 148, 204) The BRA also for many years owned certain property surrounding the Lake, some of which it leased to people to build houses and cabins, amounting to approximately 1,500 residential leased lots. (R.R. Vol.4 p.156-57)

In 2009, the Texas Legislature passed HB3031, codified as SPEC. DIST. LOC. LAWS § 8502.020, which required the BRA to divest most of the property it owned above the 1000-foot mean sea level contour and adjacent to Possum Kingdom Lake. (R.R. Vol.4 p.159, 162-63). As part of the divestiture, the Legislature required the BRA to impose certain restrictive covenants on the property it was divesting. (R.R. Vol.4 p.164) The BRA did so by Declaration of Restrictive Covenants, Easements, and Conditions (the "Declaration") filed on October 19, 2010 in Palo Pinto County. (R.R. Vol.4 p.165-65; Vol.8 p.360-402 Ex.D1) Among those restrictions specifically required by HB3031 were those requiring the consent

of the BRA to place improvements in, on, or over the Lake and requiring owners of property around the Lake like Baumgardner to comply with the rules and regulations of the BRA. (R.R. Vol.8 p.360-76) Baumgardner acquired title to his lot adjacent to Possum Kingdom Lake in December of 2013, (Vol.8 p.451-32 Ex.D5), making Baumgardner's lot subject to the Declaration. (R.R. Vol.4 p.166; Vol.8 p.451-32 Ex.D5, p.400-01 Ex.D1)

In June of 2014, Baumgardner called Mr. Kent Edwards, the inspection supervisor at Possum Kingdom Lake, about dredging in the Lake around his existing dock and about pouring concrete below the 1000-foot contour for, among other things, a concrete boat ramp. (R.R. Vol.3, p.28-29, 93) Mr. Edwards told him on that phone call that he could not give him a permit to build a boat ramp because the BRA did not allow new, privately held boat ramps at the Lake. (R.R. Vol.3, p.93; Vol.4 p.200) The BRA has not allowed new residential boat ramps at Possum Kingdom since 2006. (R.R. Vol.4 p.197, 202).

On September 12, 2014, Baumgardner submitted a permit application (the "Application") to the BRA, which included a request, among other things, for a "boat entry way." The applied-for construction was to be done entirely below the 1000-foot contour line, i.e. on BRA's property. (R.R. Vol.4, p.204) On September 22, 2014, the BRA sent a letter to Baumgardner denying Baumgardner's request to build a "concrete boat entry way", i.e. a boat ramp on BRA's property. Despite these clear and unequivocal denials, in March of 2015 Baumgardner constructed a

75-foot long boat ramp anyway, nearly all of which was constructed below the 1000-foot contour, i.e. on BRA's property. (R.R. Vol.3 p.92, 103, 120, 123; Vol.4 p.204)

In April of 2015, the BRA discovered that Baumgardner had built the boat ramp in Possum Kingdom Lake on BRA's property, below the 1000-foot contour line, directly contrary to the BRA's clear and unequivocal denial of Baumgardner's Application for a permit. (R.R. Vol.4 p.206; Vol.8 p.476-81). On April 13, 2015, April 29, 2015, and May 29, 2015, the BRA sent letters to Baumgardner notifying him the ramp was not authorized and must be removed. (R.R. Vol.8 p.456, 473, 474) In November of 2016, the BRA sent emails and letters to Baumgardner again notifying him that all structures below the 1000-foot contour line are on BRA property and must be removed. (R.R. Vol.8 p.475, 482-84) Baumgardner did not remove the ramp.

On October 16, 2017, Baumgardner submitted an application to modify his existing on-water facility, i.e. floating boat dock, specifically to remove his old boat dock and to attach a new and larger floating boat dock. (R.R. Vol.8 p.487-88 Ex.D20) On October 31, 2017, the BRA sent Baumgardner a letter telling him that his application to modify his on-water facility would not be considered by the BRA until the boat ramp and other issues were resolved. (R.R. Vol.8 p.494 Ex.D22) This letter clarified that the BRA was not authorizing his request to modify his existing on-water facility, i.e. the floating boat dock. (*Id.*)

The BRA also sent a second letter on October 31, 2017 directing Baumgardner to remove the boat ramp by November 30, 2017 or submit a removal plan by that date. (R.R. Vol.8 p.495 Ex.D23) Again, Baumgardner did not remove the boat ramp or submit any plan for its removal.

In March of 2020, while the lawsuit over the boat ramp was pending, the BRA discovered that Baumgardner had added the new and larger floating boat dock to his existing on-water facility, the very same floating dock that BRA clearly and unequivocally refused to authorize in 2017. (R.R. Vol.8 p.506-13 Ex.D27) On March 20, 2020, the BRA notified Baumgardner that he was required to obtain a permit for his added floating boat dock, that he did not have a valid permit for the on-water facility currently located on his property, that the BRA would not even consider a permit for the dock until he remedied the other violations on his property, that the newly added floating boat dock must be removed within 30 days and that a failure to remove it would constitute a violation of the Regulations and constitute trespass. (R.R. Vol.8 p.514) Baumgardner did not remove the newly added floating boat dock or remove the boat ramp.

## SUMMARY OF THE ARGUMENT

Section 22.220(d)(1) of the Texas Government Code provides that the Fifteenth Court of Appeals has exclusive intermediate appellate jurisdiction over "matters brought by or against the state or a board, commission, department, office, or other agency in the executive branch of the state government, including a

university system or institution of higher education." Because the Brazos River Authority is not a "board, commission, department, office, or other agency in the executive branch of the state government, including a university system or institution of higher education," this matter does not fall under the exclusive jurisdiction of the Fifteenth Court of Appeals, and therefore should be transferred to the Tenth Court of Appeals, which has primary jurisdiction over this matter.

## ARGUMENT AND AUTHORITIES

TEXAS GOVERNMENT CODE § 22.220(a) states that "[e]xcept as provided by Subsection (d), each court of appeals has appellate jurisdiction of all civil cases within its district of which the district courts or county courts have jurisdiction when the amount in controversy or the judgment rendered exceeds $250, exclusive of interest and costs." This case is an appeal from the 170th District Court in Waco, McLennan County, Texas. The Tenth Court of Appeals District includes McLennan County. *See* TEX. GOV'T CODE § 22.201(k). Thus, the Tenth Court of Appeals has jurisdiction over this case unless TEX. GOV'T CODE § 22.220(d) applies.

Under TEX. GOV'T CODE § 22.220(d)(1), the Fifteenth Court of Appeals has exclusive intermediate appellate jurisdiction over "matters brought by or against the state or a board, commission, department, office, or other agency in the executive branch of the state government, including a university system or institution of higher education . . . ." This exclusive jurisdiction does not apply to

this case because the Brazos River Authority is not a "board, commission, department, office, or other agency in the executive branch of the state government" or a "a university system or institution of higher education" and this case does not fall under any other exclusive jurisdiction of the Fifteenth Court of Appeals. As a result, this case must be transferred back to the Tenth Court of Appeals as the Fifteenth Court of Appeals lacks jurisdiction.

**A.      Under the Plain Language of § 22.220(d) and Other Similar Statutes, the Brazos River Authority is Not a "board, commission, department, office, or other agency in the executive branch of the state government."**

This issue before this Court is the interpretation of a statute. The primary goal in interpreting a statute is to ascertain and to effectuate the legislative intent. *See Sw. Royalties, Inc. v. Hegar,* 500 S.W.3d 400, 404 (Tex. 2016). In doing so, the Court should look to the statute's plain language. *See Helena Chem. Co. v. Wilkins,* 47 S.W.3d 486, 493 (Tex. 2001); *Fitzgerald v. Advanced Spine Fixation Sys., Inc.,* 996 S.W.2d 864, 865 (Tex. 1999). The Court may also consider: the object sought to be obtained; the circumstances of the statute's enactment; the legislative history; the common law or former statutory provisions, including laws on the same or similar subjects; the consequences of a particular construction; administrative construction of the statute; and the title, preamble, and emergency provision. TEX. GOV'T CODE § 311.023; *Helena Chem. Co.,* 47 S.W.3d at 493

(citing *Ken Petroleum Corp. v. Questor Drilling Corp.,* 24 S.W.3d 344, 350 (Tex. 2000)).

The Brazos River Authority is a river authority, formerly called a conservation and reclamation district, created under Art. XVI § 59 of the Texas Constitution. In its enabling legislation, the Brazos River Authority is described as "a governmental agency, a municipality, and a body politic and corporate." *See* TEX. SPEC. DISTS. CODE § 8502.001. The statutes governing its authority and territory are set forth in Title 6 of the *Texas Special Districts Code* along with other river authorities, drainage districts, special utility districts, municipal utility districts, irrigation districts, water improvement districts, and other similar special purpose districts.

There is extensive case law, as well as opinions of the Texas Attorney General, holding that river authorities are not state agencies under numerous Texas statutes or under common law and holding that river authorities are more comparable to counties, political subdivisions, and other local governmental entities. *See Willacy Cty. Water Control & Improv. Dist. v. Abendroth,* 177 S.W.2d 936, 937 (Tex. 1944) ("Irrigation districts, navigation districts, levee and improvement districts, and like political subdivisions created under Section 50a of Article XVI of the Constitution, and statutes enacted thereunder . . . are held to be political subdivisions of the State, performing governmental functions, and standing upon the same footing as counties and other political subdivisions

established by law."); *Guar. Petroleum Corp. v. Armstrong,* 609 S.W.2d 529, 530 (Tex. 1980) ("[T]he Navigation District is not a 'department, board or agency of the state' . . . . The Navigation District was created pursuant to Article XVI, Section 59, of the Texas Constitution. We regard the law as settled that a navigation district created under that constitutional provision is a political subdivision."); *San Antonio River Auth. v. Austin Bridge & Rd., L.P.,* 601 S.W.3d 616, 620 (Tex. 2020) ("The River Authority, however, is a local government created under the Texas Constitution. . . . a political subdivision of the State"); *Hodge v. Lower Colo. River Auth.,* 163 S.W.2d 855, 857 (Tex. Civ. App.—Austin 1942, writ dism'd by agr.) (finding "such districts, created under Sec. 59(a) of Art. 16 of the Constitution, are political subdivisions of the state of the same nature and stand upon exactly the same footing as counties, or precincts, or any of the other political subdivisions of the state"); *Lower Colo. River Auth. v. Riley,* No. 10-10-00092-CV, 2011 Tex. App. LEXIS 10236, at *2 (Tex. App.—Waco Dec. 28, 2011, no pet.) (comparing the LCRA to counties, cities, and school districts for purposes of governmental immunity as opposed to sovereign immunity which applies to the State and its agencies and boards); TEX. GOV'T CODE § 2269.002 (including river authorities under the definition of "local government" along with counties and other political subdivisions); Tex. Att'y Gen. Op. V-569 (1948) (ruling that river authorities and other entities created under § 59 of art. XVI were not a "department, commission, institution or agency of the State Government" under

the Employees' Retirement Act); Tex. Att'y Gen. Op. WW-202 (1957) (finding that river authorities were not a "state agency," which was defined as an "office, department, commission or board of the executive department of government"); Tex. Att'y Gen. Op. M-522 (1969) ("Navigational Districts and like political subdivisions, created under the constitutional provision for conservation and development of natural resources and statutes enacted thereunder, are political subdivisions of the state performing governmental functions and standing upon the same footing as counties and other political subdivisions established by law."); Tex. Att'y Gen. Op. H-10 (1973) (concluding that a river authority was a 'local governmental district' and that a state employee was not barred from serving as a director of the authority at the same time); and Tex. Att'y Gen. Op. JM-1005 (1989) (opining that a river authority was not a "state agency, institution, or department" for purposes of being entitled to representation by the Texas Attorney General). There is thus extensive case law and other legal authority that river authorities are not state agencies in the executive branch of the state government under the plain reading of that language.

Also, the accepted rules of statutory construction precludes interpreting the wording of the statute in question to include river authorities within the scope of the statutory language. The language "board, commission, department, office, or other agency in the executive branch of the state government" appears frequently throughout the *Texas Government Code* and in many other statutes applicable to

the State, its agencies, and political subdivisions. *See e.g.* TEX. GOV'T CODE § 2007.002(1)(A); TEX. BUS. ORGS. CODE § 22.356(a)(1); TEX. EST. CODE § 22.014(5); TEX. LAB. CODE § 21.002(14); TEX. GOV'T CODE § 411.1405(a)(2); TEX. GOV'T CODE § 403.0271(f)(1); TEX. GOV'T CODE § 403.039(d); TEX. GOV'T CODE § 411.0251(3); TEX. GOV'T CODE § 468.001; TEX. GOV'T CODE § 554.001; TEX. GOV'T CODE § 657.001; TEX. GOV'T CODE § 2113.001(2); TEX. GOV'T CODE § 2401.001; and TEX. NAT. RES. CODE § 119.007 to name a few.

In all of these statutes, if the Legislature wants to include local governmental entities, political subdivisions, and special districts like the river authorities, that are not usually considered agencies in the executive branch of state government, it does so by naming them directly and separately from state agencies and institutions of higher education: Compare TEX. GOV'T CODE § 2007.002(1)(B), TEX. GOV'T CODE § 554.001, TEX. GOV'T CODE § 2401.001, TEX. LAB. CODE § 21.002(12), and TEX. EST. CODE § 22.014(5), identified above, all of which list political subdivisions and special purpose districts separate and apart from a state agency and institutions of higher education, which are defined together.

A good example of this is the language of TEX. GOV'T CODE § 325.025, which brings river authorities under limited sunset review: "A river authority listed in Subsection (b) is subject to a limited review under this chapter *as if it were a state agency* but may not be abolished." (emphasis added) By that language, the legislature is expressly acknowledging that the river authorities listed (which

includes the Brazos River Authority) are not state agencies, but for limited purposes of that chapter will be treated similarly. The language used by the Legislature in the Sunset Act clearly establishes that the Legislature does not consider river authorities, like other political subdivisions and special districts, to be included with state agencies and institutions of higher education when it uses those terms. Otherwise it would not have deemed it necessary to address them separately in § 325.025 because the Legislature did want river authorities to be in part subject to Sunset review.

There are many other examples of the Legislature using specific provisions in a statute when it wants river authorities included in the scope of the statute, because the Legislature does not consider river authorities to be state agencies. *See, e.g.,* TEX. CIV. PRAC. & REM. CODE § 101.001 (defining a river authority as a political subdivisions of the state, separately from the state and state agencies); TEX. GOV'T CODE § 2254.002 (identifying a "district, authority, county, municipality, or other political subdivision of the state" separate and apart from a "state agency or department"); TEX. GOV'T CODE § 2269.002 (including river authorities under the definition of local government separate and apart from a state agency); TEX. GOV'T CODE § 552.003 (identifying the governing board of a special district separate and apart from a board or agency under the executive or legislative branch of the state government); TEX. CIV. PRAC. & REM. CODE § 16.061 (classifying entities created under Section 59, Article XVI of the Texas

Constitution as political subdivisions of the state, separate from the state). These statutes also show that if the Legislature wants a statute to apply to other political subdivisions and special districts, and not just state agencies, it will do so specifically, and not by implication. *See Arbor E&T, LLC v. Lower Rio Grande Valley Workforce Dev. Bd., Inc.,* 476 S.W.3d 25, 37 (Tex. App.—Corpus Christi 2013, no pet.) ("If a 'local workforce development board' were within any branch of state government, it would be unnecessary to list it separately from the first prong of the definition, which includes a board within the executive or legislative branch."). It is clear that the Legislature did not intend to include river authorities under TEXAS GOVERNMENT CODE 22.220(d)(1) because, if it had, it would have specifically listed that in the statutory language as it has done in numerous other statutes.

TEXAS GOVERNMENT CODE § 22.220(d) only lists appeals against the state or other agency in the executive branch of the state government as falling under the exclusive jurisdiction of the Fifteenth Court of Appeals. It does not include any language indicating that such definition is intended to include river authorities or other local governments or political subdivisions of the state like the Brazos River Authority. If the Legislature wanted to include river authorities or other special districts and political subdivisions like river authorities in that exclusive jurisdiction, it would have done so specifically. To read otherwise, would be to include cases by or against the over 3,300 other special purpose districts and

political subdivisions that currently exist in the State of Texas[1] within the exclusive jurisdiction of the Fifteenth Court of Appeals, without any indication that such a broad category of cases was to be included, and despite the fact that the Legislature did not use additional language as it has used numerous times when such inclusion was intended.

**B.    The Brazos River Authority Does Not Have State-Wide Jurisdiction.**

In analyzing whether an agency, board, or commission is a state agency or agency within the executive branch, one required element included in many statutes and cited by courts and other legal opinions is whether the agency, board, or commission has state-wide jurisdiction. *See Monsanto Co. v. Cornerstones M.U.D.,* 865 S.W.2d 937, 939 (Tex. 1993) (municipal utility district was not state or state agency because it did not have statewide jurisdiction); *Tex. DOT v. City of Sunset Valley,* 146 S.W.3d 637, 643 (Tex. 2004) ("[W]e have long recognized a distinction between agencies of the State, which generally exercise statewide jurisdiction, and political subdivisions like municipalities, which have limited geographic jurisdiction."); *De Santiago v. W. Tex. Cmty. Supervision & Corr. Dep't,* 203 S.W.3d 387, 393-94 (Tex. App.—El Paso 2006, no pet.) ("WTCSCD

---

[1] There are currently over 3,300 special purpose districts in the State of Texas *See Invisible Government: Special Purpose Districts in Texas*, A Publication of the Senate Research Center, October 2014, p. 51, which is available at the Texas Comptroller's website at: https://comptroller.texas.gov/transparency/local/special-purpose.php#:~:text=In%20Texas%2C%20thousands%20of%20local,utilities%20and%20fire%20control%20efforts

does not meet the definition of state agency because it is not in the executive branch of government and it does not have statewide jurisdiction. The services it provides are limited to the judicial districts which it serves."); *Arbor E&T, LLC v. Lower Rio Grande Valley Workforce Dev. Bd., Inc.,* 476 S.W.3d 25, 34 (Tex. App.—Corpus Christi 2013, no pet.) (finding the workforce development board is not a state agency because it does not have statewide jurisdiction); TEX. CIV. PRAC. & REM. CODE § 105.001(3) (defining state agency as "a board, commission, department, office, or other agency that . . . has statewide jurisdiction."); TEX. CIV. PRAC. & REM. CODE § 102.001(2) (defining "local government" to include "special purpose district, including a soil and water conservation district, and any other political subdivision of the state"); Tex. Att'y Gen. Op. WW-202 (1957) (opining that River Authorities were not state agencies under the statute in question, in part because they do not have state-wide jurisdiction, and also because such "River Authorities are not commonly understood to be 'offices, departments, commissions, or boards'"); Tex. Att'y Gen. Op. JM-197 (1984) (finding county attorneys were not officers or employees of the state for purposes of what is now chapter 104 of the Civil Practice & Remedies Code because those statutes only applied to officers and employees of agencies, institutions, and departments having state-wide jurisdiction); Tex. Att'y Gen. Op. V-569 (1948) (ruling that river authorities and other entities created under § 59 of art. XVI were not a "department, commission, institution or agency of the State Government" under

the Employees' Retirement Act because the Legislature only contemplated those employees whose duties relate to state-wide activities for inclusion under the Act).

The Brazos River Authority, like other river authorities, has limited jurisdiction, not state-wide jurisdiction. *See* TEX. SPEC. DISTS. CODE § 8502.003 ("The territory of the authority comprises the watershed of the Brazos River, as determined by rule of the Texas Water Development Board, except the portions lying within Freestone, Leon, and Madison counties.").

On November 1, 2000, the Texas Senate Committee on Natural Resources of the 76th Legislature issued a report, *Missions and Roles of Texas River Authorities*,[2]. In that report, the Committee defines a river authority as "regional water management entities" and describes them basically as "a large water district" or "little more than an extended, multi-county water district." (pp. 6, 10) The Committee explains that river authorities are one component of a multi-faceted system, which includes federal and state agencies, local water districts, counties, cities, and private corporations. River authorities are generally formed along watershed boundaries, and some rivers even accommodate multiple authorities. (pp. 6-7)

This element of state-wide jurisdiction is particularly relevant for the applicability of TEX. GOV'T CODE § 22.220(d) and the exclusive jurisdiction of the

---

[2] The Report can be found on the website for the Texas Senate at:
https://senate.texas.gov/cmtes/76/c580/riv_auth_i.pdf and https://senate.texas.gov/cmtes/76/c580/riv_auth_ii.pdf.

Fifteenth Court of Appeals. One of the stated purposes of the Fifteenth Court of Appeals is to have justices that are elected statewide to review civil cases of statewide significance. *See* Senate Comm. Report, Bill Analysis, Tex. S.B. 1045, 88th Leg., R.S. (2023). Notably, statutes applicable to "state agencies" often concern at their base the expenditure of state funds. Not only does the Brazos River Authority not have statewide responsibility, but it also does not receive an appropriated budget from the State; its funding comes through the sale of water and related services within its jurisdiction.[3] *See Bonin v. Sabine River Auth.,* 65 F.4th 249, 256 (5th Cir. 2023) (finding the source of funding the most important factor in determining if an entity is to be considered an arm of the State for purposes of the Eleventh Amendment of the federal constitution). This further emphasizes that lawsuits against the Brazos River Authority are not of "statewide" significance. Because the Brazos River Authority has limited jurisdiction and is more akin to a county or other local government, it does not fall under the stated intentions and purposes of the Legislature in creating the Fifteenth Court of Appeals and defining the exclusive jurisdiction of this new court.

### C. The Brazos River Authority is Not Like a University or Institution of Higher Education.

In his briefing to the intermediate appellate courts, Appellant has argued that because TEX. GOV'T CODE § 22.220(d)(1) specifically includes university systems

---

[3] Information on the annual budget for the Brazos River Authority, including the source of its revenues, can be found on its website at https://brazos.org/about-us/about-the-bra/financial-information/annual-budget.

and institutions of higher education, such language should by implication be read to include river authorities and other political subdivisions and special districts like it. Appellant argues that universities and institutions of higher education are not generally considered state agencies, and thus by specifically including them in the exclusive jurisdiction the Legislature intended to include all other public entities as well. Appellant is essentially arguing that by inclusion of the phrase "universities and institutions of higher education" the Legislature has, by implication also included over 3,300 other political subdivisions or special districts, including the BRA.

First, Appellant is incorrect that institutions of higher education are not often included with state agencies in the entities to which a statute applies. The Legislature frequently, by specific language, includes institutions of higher education along with state agencies in statutory definitions using nearly identical language to that used here. *See, e.g.,* TEX. GOV'T CODE § 2007.002(1)(A) ("Governmental entity" means: (A) a board, commission, council, department, or other agency in the executive branch of state government that is created by constitution or statute, including an institution of higher education as defined by Section 61.003, Education Code."); TEX. BUS. ORGS. CODE § 22.356(a)(1) ("In this section, 'state agency' means: a board, commission, department, office, or other entity that is in the executive branch of state government and that was created by the constitution or a statute of this state, including an institution of higher

education as defined by Section 61.003, Education Code."); TEX. EST. CODE § 22.014(5) ("'Governmental agency of the state' means: a board, commission, department, office, or other agency in the executive branch of state government, including an institution of higher education, as defined by Section 61.003, Education Code"); TEX. LAB. CODE § 21.002(14) ("'State agency' means: (A) a board, commission, committee, council, department, institution, office, or agency in the executive branch of state government having statewide jurisdiction; . . . (C) an institution of higher education as defined by Section 61.003, Education Code."); *see also,* TEX. GOV'T CODE § 411.1405(a)(2); TEX. GOV'T CODE § 403.0271(f)(1); TEX. GOV'T CODE § 403.039(d); TEX. GOV'T CODE § 411.0251(3); TEX. GOV'T CODE § 468.001; TEX. GOV'T CODE § 554.001; TEX. GOV'T CODE § 657.001; TEX. GOV'T CODE § 2113.001(2); TEX. GOV'T CODE § 2401.001; TEX. NAT. RES. CODE § 119.007, to name a few.[4] When the Legislature wants institutions of higher education included in the application of a statute, it does so by specific language because the Legislature recognizes that institutions of higher education are not state agencies.

Including university systems and institutions of higher education along with state agencies in the exclusive jurisdiction of the Fifteenth Court of Appeals does

---

[4] "University system" and "institution of higher education" are so frequently included within the definition of state agency, that they are specifically excluded in those few places where they do not fall under the definition of state agency. *See, e.g.,* TEX. HEALTH & SAFETY CODE § 361.421(10) and TEX. GOV'T CODE § 447.010(k).

not imply that any other public entities are also included in this specific jurisdiction. These two are specifically included by the Legislature to be in that exclusive jurisdiction but river authorities are not so included. As detailed above, when the Legislature wants to include other political subdivisions and special districts like the BRA, that are not usually considered agencies in the executive branch of state government, it does so directly and separately from state agencies *and institutions of higher education. See* TEX. GOV'T CODE § 2007.002(1)(B), TEX. GOV'T CODE § 554.001, TEX. GOV'T CODE § 2401.001, TEX. LAB. CODE § 21.002(12), and TEX. EST. CODE § 22.014, all of which list political subdivisions and special purpose districts separate and apart both from a state agency and from institutions of higher education. Notably, Appellant has not cited to any authority that groups a river authority in the definition of "university system" or "institution of higher education."

While the Legislature did not specify a reason to include university systems and institutions of higher education with state agencies in this statute as being under the exclusive jurisdiction of the Fifteenth Court of Appeals, it is not hard to see why the Legislature did so. Unlike the other political subdivisions and special districts like the BRA, universities and institutions of higher education are not limited in their reach to just specific regions but rather have a statewide influence in the programs they offer and the students they serve.

Many institutions, particularly the university systems, have campuses across the state. *See, e.g.,* TEX. EDUC. CODE § 65.02, identifying 14 separate campuses for the University of Texas system across all regions of the state, and Chapter 87 of the Texas Education Code, identifying 12 other campuses for the Texas A&M University System besides College Station. Texas university systems and institutions of higher education also engage in numerous state-wide programs and services: dual-credit programs in Texas public high schools,[5] medical student interns and nursing interns in Texas hospitals, Texas Tech's K-12 academic programs,[6] and state-wide research programs like Texas A&M's AgriLife Extension Service,[7] to name a few.

In addition to having campuses and programs across the state, university systems and institutions of higher education also receive students from across the state, without limitation to where any campus is actually located. In that sense, university systems and institutions of higher education are not limited in their jurisdiction at all, any more so than state agencies are limited by the building they occupy. Thus, actions by and against the university systems and other institutions of higher education are going to affect both college age and younger students all across the state that attend that university or institution or participate in their programs. Notably, many of these students (and their parents) often have an

---

[5] https://tea.texas.gov/academics/college-career-and-military-prep/dual-credit
[6] https://www.depts.ttu.edu/k12/
[7] https://agrilifeextension.tamu.edu/

established residency in another part of the state from their school campus. This means they would not have a part in the democratic process for selecting intermediate appellate court justices in the area where that university or institution is located. Also, colleges and universities receive both state and federal funds to conduct academic research, the results of which often affect the state as a whole. Compare this to river authorities, and other political subdivisions and special districts (like counties and local school districts), whose decisions generally affect only those persons living in their limited jurisdiction.

**D. The Legislature Did Not Create Jurisdiction for the Fifteenth Court of Appeals by Exclusion.**

In prior briefing to the appellate courts below, Appellant Baumgardner also seems to argue that river authorities and other political subdivisions and special districts are included in the exclusive jurisdiction of the Fifteenth Court of Appeals simply because they not specifically excluded from that jurisdiction. Appellant claims that because TEX. GOV'T CODE § 22.220(d)(1)(C) excludes a proceeding brought against a district attorney, a criminal district attorney, or a county attorney with criminal jurisdiction from the exclusive jurisdiction of the Fifteenth Court of Appeals, and TEX. GOV'T CODE § 22.220(d)(1)(N) excludes a removal action under Chapter 87, Local Government Code, that by implication the exclusive jurisdiction of § 22.220(d)(1) must then include all other actions against counties and other like political subdivisions because they are not specifically excluded. Under this

argument, Appellant would not only bring into the Fifteenth Court of Appeals lawsuits affecting the 3,300 special purpose districts and political subdivisions of the State of Texas, but also its 254 counties as well.

This argument fails here because it is clear the Legislature did not create the jurisdiction of the Fifteenth Court of Appeals broadly by exclusion; it is a specific grant of jurisdiction with only those matters specifically stated to be included. If the Legislature wanted counties and other like political subdivisions included in this specific grant of jurisdiction, it would have done so directly like it has numerous times before in other statutes and legislation, and not by implication or exclusion. This is even more clear because the jurisdiction of the Fifteenth Court of Appeals is itself an exclusion to jurisdiction. Subsection (a) of TEX. GOV'T CODE § 22.220(a), which creates broad civil jurisdiction of the courts of appeals, starts with "[e]xcept as provided by Subsection (d), . . . ." Thus, any cases to be included in the exclusive jurisdiction of the Fifteenth Court of Appeals would need to be specifically identified in subsection (d), since all others not listed would fall under subsection (a).

There is also a much simpler reason why the Legislature might have wanted to make clear that these mostly county proceedings noted by Appellant were not included in the exclusive jurisdiction of the Fifteenth Court of Appeals. District attorneys, criminal district attorneys, and county attorneys with criminal jurisdiction, while elected to serve a specific county or a specific judicial district,

generally prosecute cases in the name of the "State of Texas."[8] If the Legislautre did not want to include these proceedings in the jurisdiction of the Fifteenth Court of Appeals, it makes sense to exclude these cases in the list of specific exclusions from the exclusive jurisdiction of § 22.220(d) because these proceedings would be brought against those county officers in relation to their criminal prosecutions in the name of the "State of Texas." By specifically excluding these types of proceedings, the Legislature is simply making clear that they are not intended in the coverage of "matters brought by or against the state" even though they involve cases prosecuted in the name of the State or by or against officials who, at least in name, represent the State.

Similarly, the exclusion of removal of county officers under chapter 87 of the Local Government Code is specifically included in the list of exclusions because it also includes removal of officers that bring cases in the name of the State of Texas, like a district attorney and a county attorney, or issue process in the name of the State of Texas, like district and county clerks. Like with § 22.220(d)(1)(C), the Legislature wanted to make clear that the exclusive jurisdiction of § 22.220(d) did not include these cases, despite these officers being involved in proceedings brought in the name of the State.

---

[8] *See, e.g. Lopez v. State,* No. 10-23-00237-CR, 2024 Tex. App. LEXIS 5676, at *1 (Tex. App.—Waco Aug. 8, 2024, no pet. h.) (from the County Court, Ellis County); *Mangum v. State,* No. 10-24-00242-CR, 2024 Tex. App. LEXIS 5671, at *1 (Tex. App.—Waco Aug. 8, 2024, no pet. h.) (from the County Court at law of Brazos County); and *Kirven v. State,* No. 10-23-00212-CR, 2024 Tex. App. LEXIS 5873, at *1 (Tex. App.—Waco Aug. 15, 2024, no pet. h.) (from the 54th District Court, McLennan County).

It takes a great leap of thought not supported by logic to conclude that by excluding a few specific proceedings that affect county officials, the Legislature therefore by implication meant to include counties, and with them thousands of political subdivisions, special purpose districts, and other regional public entities in the limited jurisdiction of the Fifteenth Court of Appeals, without any other indication of their intent to do so. Appellant would have specific and limited exclusive of jurisdiction language be interpreted to result in a massive inclusion of jurisdiction. It is clear the Legislature did not intend to create jurisdiction for the Fifteenth Court of Appeals by implication or by exclusion of other jurisdiction, which is in essence what Appellant is arguing here. If the Legislature wanted river authorities, counties, political subdivisions, or special districts to be included in the exclusive jurisdiction, it would have just done so directly with specific and frequently used language, like it has in nearly every other statute.

## PRAYER FOR RELIEF

The plain language of Tex. Gov't Code § 22.220(d)(1) brings only matters brought against the "state or a board, commission, department, office, or other agency in the executive branch of the state government, including a university system or institution of higher education" under the jurisdiction of the Fifteenth Court of Appeals. Numerous opinions from this Court and the courts of appeals, as well as over 75 years of opinions from the Texas Attorney General, hold that river authorities and other special purpose districts like them are not agencies of the state

Appellee's/Movant's Brief

or in the executive branch of the state government. In other statutes using the same or similar language to § 22.220(d)(1), when river authorities or other political subdivisions of the state are to be included in the application of the statute, they are specifically included in the language of the statute, and most often separate and apart from the state and state agencies, and almost never by implication. This is because river authorities, like the 3,300 other special purpose districts and political subdivisions of the state, are regional or local governmental entities and do not have state-wide jurisdiction or influence like the state and its executive agencies and institutions of higher education. Since this is one of the primary reasons the Legislature gave for the creation of the Fifteenth Court of Appeals, it makes sense that river authorities were not included in the jurisdiction of this court. To hold otherwise would not only bring in these 3,300 political subdivisions to the docket of the Fifteenth Court of Appeals, it could also potentially impact interpretation of the numerous other statutes found only to apply to the state and executive agencies under identical or nearly identical language used in § 22.220(d)(1). For these reasons, this Court should hold that this appeal does not fall under the exclusive jurisdiction of the Fifteenth Court of Appeals and that this case must be transferred back to the Tenth Court of Appeals.

Respectfully submitted,

NAMAN, HOWELL, SMITH & LEE, PLLC
400 Austin Ave., Ste 800
P.O. Box 1470
Waco, TX 76703-1470
254/755-4100 (Telephone)
254/754-6331 (Facsimile)


BY:\_\_/s/ Roy L. Barrett_____

Roy L. Barrett
State Bar No. 01814000
barrett@namanhowell.com
Stephanie E. Schwab
State Bar No. 24088370
sschwab@namanhowell.com

COUNSEL FOR APPELLEE


## **CERTIFICATION**

I certify that I have reviewed the petition and have concluded that every factual statement made herein is supported by competent evidence included in the appendix or the record. The documents in the attached appendix are true and correct copies of the originals.

Pursuant to Texas Rule of Appellate Procedure 9.4(i)(3), I hereby certify that this brief contains 6,055 words (excluding the matters not counted under the rules). This is a computer-generated document created in Microsoft Word, using 14-point typeface for all text, except for footnotes which are in 13-point typeface. In making this certificate of compliance, I am relying on the word count provided by the software used to prepare the document.

BY: \_\_\_\_\_*/s/ Stephanie E. Schwab*_____
Stephanie E. Schwab
State Bar No. 24088370

## CERTIFICATE OF SERVICE

This is to certify that a true and correct copy of the above and foregoing document was served by electronic filing to Larry L. Fowler, Jr., Harris Cook, 1309-A West Abram, Arlington, Texas 76013 on this 18th day of December, 2024.

*/s/ Stephanie E. Schwab*
Stephanie E. Schwab

**Automated Certificate of eService**

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Ivia Lee on behalf of Roy Barrett
Bar No. 1814000
Ilee@namanhowell.com
Envelope ID: 95464718
Filing Code Description: Brief Not Requesting Oral Argument
Filing Description: Movant Brazos River Authority Brief re: Transfer to Tenth Court of Appeals
Status as of 12/18/2024 3:12 PM CST

Case Contacts

| Name | BarNumber | Email | TimestampSubmitted | Status |
|---|---|---|---|---|
| Larry Fowler | 7321900 | Larry@HarrisCookLaw.com | 12/18/2024 2:54:16 PM | SENT |
| Rance Craft | | rance.craft@oag.texas.gov | 12/18/2024 2:54:16 PM | SENT |
| Sharon Brown | | Sharon@HarrisCookLaw.com | 12/18/2024 2:54:16 PM | SENT |
| Nancy Villarreal | | nancy.villarreal@oag.texas.gov | 12/18/2024 2:54:16 PM | SENT |
| Arin KSchall | | arin@harriscooklaw.com | 12/18/2024 2:54:16 PM | SENT |

Associated Case Party: Brazos River Authority

| Name | BarNumber | Email | TimestampSubmitted | Status |
|---|---|---|---|---|
| Karen DeLeon | | karen@namanhowell.com | 12/18/2024 2:54:16 PM | SENT |
| Roy L.Barrett | | barrett@namanhowell.com | 12/18/2024 2:54:16 PM | SENT |
| Stephanie E. Schwab | | sschwab@namanhowell.com | 12/18/2024 2:54:16 PM | SENT |
| Ivia Lee | | ilee@namanhowell.com | 12/18/2024 2:54:16 PM | SENT |